301 So.2d 448 (1974)
In re THE FLORIDA BAR.
In re Robert Duncan TIMSON.
No. 44701.
Supreme Court of Florida.
September 18, 1974.
*449 Robert Duncan Timson, in pro. per.
William F. Simonet, Bar Counsel, Orlando, and Wilson J. Foster, Jr., Asst. Staff Counsel, Tallahassee, for The Florida Bar, respondent.
PER CURIAM.
We have for consideration a referee's findings, conclusions and recommendations concerning the petition of Robert D. Timson for reinstatement as a member of The Florida Bar, pursuant to Rule 11.11, Integration Rule of The Florida Bar.
The proceedings were conducted pursuant to the rules as they existed prior to the amendment on December 1, 1972. Since December 1, 1972, an attorney who has been permanently disbarred may only be admitted upon full compliance with the rules and regulations governing admissions to The Florida Bar. Also, such application may not be tendered earlier than three years after the date of disbarment. Timson, 64 years of age and married, resides in Orlando, Florida. In 1963, he was privately reprimanded for his failure to appear with a client in court at the time the client was sentenced to prison. In 1969, the Board of Governors wrote Timson a confidential letter reprimanding him for failure to account promptly to a client for funds belonging to the client.
Proceedings were brought charging Timson with mishandling a real estate closing and misconduct in the defense of a criminal case. There has been no charge, however, that Timson misappropriated funds or was guilty of any bad faith. On December 15, 1971, this Court affirmed and approved the referee's findings and recommendations for disbarment.
On November 30, 1972, Timson filed a petition for reinstatement to The Florida Bar. Timson carried with him the burden of proof to establish that, since his disbarment, he had rehabilitated himself to such a degree that he should be permitted to practice law. The reasons for Timson's disbarment were lack of good judgment, lack of professional responsibility, and lack of professional ability.
The elements to be considered in regard to reinstatement of an attorney are:
1. Strict compliance with the disciplinary order.
2. Evidence of unimpeachable character.
3. Clear evidence of a good reputation for professional ability.
4. Evidence of lack of malice and ill feeling toward those involved in bringing the disciplinary proceedings.
5. Personal assurances of sense of repentance and desire to conduct practice in exemplary fashion in the future.
6. Restitution of funds.
See In re Dawson, 131 So.2d 472 (Fla. 1961).
At the proceeding before the referee, petitioner called twenty-one witnesses who confirmed that Timson's reputation for high morals and ethics was good. There was testimony that Timson's reputation for legal ability was "good," that he was "very *450 aggressive" and "qualified" to practice law. The majority of the witnesses supporting the petition judged his ability to practice law as being "adequate."
The witnesses called by The Florida Bar affirmed that Timson was highly ethical and of good moral character. Their testimony basically dealt with the ability of Timson to practice law. They described his ability in such terms as "poor," "not good," "below par" and "not exactly good."
The conclusions of the referee were as follows:
"The four matters which were the subject matter of Mr. Timson's two private reprimands and the disbarment proceeding when taken alone and out of context appear petty and not too serious. However, when viewed together as a general pattern or tendency, the matters are very serious, and they justified disbarment. Further, when these are considered in the context of the Petitioner's general reputation with the Bar and Bench, which was `poor' and `below par,' at best, they appear as illustrations of Mr. Timson's lack of professional attention and diligence, his failure to maintain and run a legal office in an acceptable manner, his lack of legal ability and knowledge and good judgment. Mr. Timson had the burden of establishing that he had rehabilitated himself, since December 1971, so as to make it appropriate to permit him to practice law again. It is the conclusion of the undersigned that the Petitioner failed to establish in a convincing manner, that this rehabilitation has taken place, or that it is complete, for the following reasons:
"1. Only 1 1/2 years have lapsed since the disbarment order was issued, and Mr. Timson perhaps has not had enough time to take concrete or specific steps towards rehabilitation. He has taken some steps. His attitude towards the Bar and his discipline is good; his personal life has improved, although his ethics and morals were never in doubt or question; and he had made personal resolutions to run his practice in a more conventional and diligent manner.
"2. The complete rehabilitation process for Mr. Timson should include re-education process, legal studies and additional training of some kind. This has not been undertaken. Without this aspect of his rehabilitation, it would be a mistake to readmit Mr. Timson to practice, in view of his low professional reputation for ability and knowledge among the judiciary and general members of the Bar. An alternative would be for Mr. Timson to submit himself to a Florida Bar Examination.
"3. Mr. Timson has complied with the disbarment order, by paying costs and refraining from practicing law. His attempt to do para-legal work and represent a client in Municipal Court after disbarment, were due to his lack of understanding of the order, and no violation, in fact, occurred.
"4. Mr. Timson's moral and ethical character are high, and were not impeached by any witness, in this proceeding.
"5. Mr. Timson's general professional reputation for legal ability with the Bench and the Bar was not clearly shown to be good. In fact, it was shown to be `poor,' `bad,' `below average,' and `not good,' in this proceeding, witnesses in the best position to know about such matters  five present and former Circuit Judges, and five lawyers active in the local Bar organization.
"6. Mr. Timson's attitude was one of lacking malice and ill feeling towards those involved in bringing the disciplinary proceedings.
"7. Mr. Timson's intentions and assurances of his understanding of his problems and desire to correct them in the future were incomplete in two regards: He still tends to minimize and explain away the matters leading to his *451 disbarment; he views his `rehabilitation' as complete, upon demonstrating a change in attitude, intent and views, whereas it is the undersigned's view that this is not sufficient in his case.
"8. Restitution of funds. Misappropriation of client funds was not one of Mr. Timson's problems. The McCormicks' funds were lost for a long period of time, but they were reimbursed by Mr. Timson in 1971. The clients were not, however, `restored' to the position they would have been in, had Mr. Timson carried out the real estate transaction as he should have done, as Mr. Coulter pointed out."
The referee recommended that the petition for reinstatement be denied or, alternatively, if the petition be granted, Timson's reinstatement be conditioned upon his successful completion of a Bar examination.
The Florida Bar asks this Court to sustain the findings of the referee and not permit the reinstatement of the petitioner.
In this proceeding there is no attack upon the moral character of the petitioner. However, the inquiry should not stop at that point, for the burden is upon Timson to show clear evidence of a "good reputation for professional ability," In re Dawson, supra. This he has failed to do.
It is our responsibility to safeguard the right of the public to secure adequate representation by attorneys and to maintain the image and integrity of The Florida Bar as a whole. See Petition of Wolf, 257 So.2d 547, 548 (Fla. 1972). The record, as well as the report of the referee, clearly shows that Timson is not presently competent to practice law.
The petition for reinstatement is denied.
It is so ordered.
ADKINS, C.J., and BOYD, McCAIN, DEKLE and OVERTON, JJ., concur.