471 So.2d 38 (1985)
THE FLORIDA BAR IN RE CHARLES K. INGLIS.
No. 61530.
Supreme Court of Florida.
June 20, 1985.
Richard T. Earle, Jr. of Earle and Earle, St. Petersburg, for petitioner.
Diane Victor Kuenzel, Bar Counsel, Tampa, for respondent.
*39 PER CURIAM.
This proceeding is before us upon the petition of Charles K. Inglis for reinstatement to the practice of law and active membership in The Florida Bar. This Court has jurisdiction and the responsibility to make an appropriate judgment in the matter. Art. V, § 15, Fla. Const.; Fla. Bar Integr.R., art. XI, Rule 11.11(9).
In 1964 this Court suspended Inglis from the practice of law for a term of eighteen months. State ex rel. The Florida Bar v. Inglis, 160 So.2d 701 (Fla. 1964). By the Court's order, reinstatement after the term of suspension was to be conditional upon payment of costs and restitution and a showing that respondent was "entitled to be reinstated in the practice of law" as measured by the applicable rule. Id. at 703. Several years later, respondent filed a petition for reinstatement but the petition was withdrawn, apparently because of inability to establish satisfaction of conditions and entitlement to reinstatement.
The present proceeding is before the Court on the report of a referee and Inglis' petition for review of the referee's findings of fact and recommended disposition. The referee recommended that reinstatement be denied. The Board of Governors of The Florida Bar has approved the recommendation of the referee.
The criteria for reinstatement to active membership in the Bar include: (1) strict compliance with the previous disciplinary order; (2) good moral character; (3) demonstrable professional ability; (4) lack of malice toward those involved in bringing about the previous disciplinary proceedings; (5) a strong sense of repentance for the prior misconduct and a genuine intention of proper conduct in the future; and (6) compliance with any conditions imposed such as restitution. The Florida Bar in re Timson, 301 So.2d 448 (Fla. 1974); In re Dawson, 131 So.2d 472 (Fla. 1961). This list is not all-inclusive; it is proper to consider all aspects of the individual with a view to determining the applicant's present fitness to resume the practice of law. The criteria can be summed up as being embodied in two components: (1) good moral character, personal integrity, and general fitness for a position of trust and confidence and (2) professional competence and ability.
The referee found that respondent had fully complied with the prior disciplinary order, that he demonstrated a sense of repentance, had shown the intention to conduct himself in an exemplary manner in the future, bore no ill will towards those responsible for the prior disciplinary action, and had made full restitution to those victimized by the prior misconduct. Regarding professional ability, the referee found that petitioner did not make the requisite showing but conceded that he had not been given the opportunity to establish possession of or a reputation for professional ability in the law. The referee in effect treated the matter as moot in view of his unfavorable findings and recommendation on the issue of good moral character.
On the question of moral character and fitness for public confidence, the referee made the following findings of fact:
Evidence of Mr. Inglis's character and moral standing is in dispute.
... .
The most damning evidence against petitioner is undisputed factually. Petitioner, together with two friends or associates, purchased a piece of vacant land in North Tampa, which came to be known as the Waters Avenue Borrow Pit. Mr. Inglis testified that he and his co-owners were finding it difficult to keep up the debt service on the Borrow Pit land, and his two co-owners directed that he, as a real estate broker, sell the property for their joint benefit.
Mr. Inglis did sell the property and, in doing so, enjoyed a very substantial windfall.
When the owners decided to sell the Borrow Pit land, Mr. Inglis insisted, upon the advice of his lawyer, that his co-owners, independently of his advice, evaluate the land to be sold. This was done.
Mr. Inglis then contracted to purchase the interest of his two co-owners and, *40 contemporaneous with the sale to him, he conveyed the land to a Dade County corporation.
Mr. Inglis bought out his associates for $29,000. He sold it for $75,000, less a $12,000 commission.
Mr. Inglis did not inform his associates and co-owners that he had contracted to sell the property for the $75,000, and they were totally unaware of it until after the transaction was completed.
Mr. Inglis protests that he had no fiduciary duty to his co-owners since they were not "partners" in the legal sense of the word and that, when he insisted they make their own appraisal of the property, the transaction then became one at arm's length.
There are similarities between Mr. Inglis's conduct in the sale of the Borrow Pit land at a price kept secret from his co-owners and the conduct which resulted in Mr. Inglis's original suspension.
Mr. Inglis protests that there was no wrongdoing on his part and, while this position may be legally correct, the Referee finds that as an associate engaged in the joint venture with other men, Mr. Inglis owed them a moral duty to disclose that he was going to make many thousands of dollars at their expense; and his failure to so inform them reflects adversely upon his moral fitness.
In addition to the dubious conduct just described, Mr. Inglis was charged with a felonious assault by shooting an infant child. The child was a three-year old daughter of Mr. Inglis's neighbor. Mr. Inglis denies that he was guilty of the offense, notwithstanding that he, in the Circuit Court of Hillsborough County, Florida, entered a plea of nolo contendere and was found guilty to the lesser charge of culpable negligence. In view of his adjudication of guilt of the crime by a Court of competent jurisdiction, petitioner's claim of innocence must fail.
... .
The Referee [finds] the conduct in the sale of the Borrow Pit property and the criminal offense does suggest that Mr. Inglis has not yet reached the mature judgment and sense of morality that a practitioner ought to have.
The referee concluded with the following recommendations:
The Referee notes that in recent years the Bar and the Court have been increasingly forgiving of transgressions of lawyers and, from time to time, have readmitted to the practice lawyers who have been found guilty of far more serious offenses than those which caused the suspension of Mr. Inglis. It is the opinion of the Referee, however, that while Mr. Inglis has been able to avoid the taint of moral turpitude, he has from time to time in his affairs with business associates and neighbors overreached and took advantage of his superior position and knowledge.
The Referee is of the opinion and so finds that Mr. Inglis's failure to meet the high standards incumbent upon a member of the Bar has not been caused from a willful, intentional desire to do wrong, but rather results from the lack of judgment as to moral values, resulting in the doleful conclusion that Mr. Inglis does not appreciate fully the nature of his dubious conduct.
It is the recommendation of the Referee that the application of Charles K. Inglis for reinstatement to the Florida Bar be denied.
This Court's review of referees' reports in reinstatement proceedings is governed by the same rules and procedures as are reports submitted in other disciplinary proceedings. Fla. Bar Integr.R., art. XI, Rule 11.11(8). On review of the report of a referee in either type of proceeding, "the burden shall be on the party seeking review to demonstrate that a report of a referee sought to be reviewed is erroneous, unlawful, or unjustified." Id., art. XI, Rule 11.09(3)(e). A referee's findings of fact "shall enjoy the same presumption of correctness as the judgment of the trier of fact in a civil proceeding." Id., art. XI, Rule 11.06(9)(a). Thus, we must accept the referee's findings of fact unless they are *41 not supported by competent, substantial evidence in the record. With regard to legal conclusions and recommendations of a referee, this Court's scope of review is somewhat broader as it is ultimately our responsibility to enter an appropriate judgment.
Having examined the petition for review, the briefs of the parties, and the evidence in the record, we find that the referee erred in his findings of fact, conclusions, and recommendation. We find that petitioner has demonstrated that he is entitled to reinstatement as far as the moral character and fitness component of the criteria is concerned.
The referee stated that petitioner was employed as a broker to negotiate a sale on behalf of his co-owners and that the investment in the land was a joint venture with his co-owners. These factual findings underlie the referee's conclusion that petitioner had a duty to disclose to his co-owners the terms of the sale he consummated after buying out his co-owners. The referee also found that, even if petitioner was correct in asserting that the sale was an arm's-length transaction and that no legal duty was violated, the petitioner's conduct was morally deficient. Our review of the record shows that there was no joint venture and no undertaking to act in the capacity of a broker on behalf of the others. Petitioner and the others were joint owners and nothing more. EAch had invested with a view to profiting individually, not jointly. His purchase from them was an arm's length transaction. His nondisclosure of his plan to sell at a profit violated no fiduciary duty under the law. Nor did it, we believe, violate any higher moral duty. We therefore disapprove the referee's findings of fact in this regard, and the conclusion flowing from them.
The other incident relied upon by the referee as precluding a finding of good conduct and good character was the shooting incident for which petitioner was convicted of the offense of culpable negligence. The incident took place about fifteen years ago. The conviction for culpable negligence does not indicate commission of a crime involving specific criminal intent or moral turpitude. It was, in effect, an accident for which petitioner was found legally responsible under a criminal statute due to his negligence. The referee's legal conclusion and recommendation regarding the incident may be reversed by this Court if we find it erroneous. Petitioner has been suspended from the practice of law for over twenty years. The incident in question took place relatively early in the suspension period. We find that the fifteen years of good conduct since the time of the accident should outweight any negative inference about petitioner based on his responsibilty for the shooting accident. We therefore disapprove the referee's conclusion and recommendation regarding the incident in question.
Having reversed the referee's findings, conclusions, and recommendations regarding the two incidents, we have also reviewed the record and find that petitioner met his burden of establishing that he is entitled to reinstatement so far as the character-and-fitness component of the reinstatement criteria is concerned. It remains only to address the professional ability component. The referee did not address this issue in depth because he recommended denial of the petition on other grounds.
In Timson and Dawson reference was made to "reputation" for professional ability as one of the criteria for reinstatement. When the period of suspension is only a few months to a few years in duration, continued professional ability can be shown by competent testimony showing a reputation for professional ability. But where, as in this case, the petitioner has been out of the practice of law for twenty years, we believe that the only reliable way to assure that the applicant has the necessary professional ability is by requiring successful completion of the Florida bar examination. The Florida Bar Integration Rule, article XI, Rule 11.11(9), provides in pertinent part:
[I]f suspension or resignation of petitioner has continued for more than three *42 years, the reinstatement may be conditioned upon the furnishing of such proof of competency as may be required by the Supreme Court, which proof may include certification by the Florida Board of Bar Examiners of the successful completion of an examination for admission to The Florida Bar subsequent to the date of suspension or resignation.
We order that proof of competency by successful completion of the entire bar examination be required in this case.
The recommendation of the referee is disapproved. The petition for reinstatement is granted as to the criteria relating to conduct, character, and fitness. Final action on the petition is deferred pending satisfaction of the condition stated above regarding the criterion of professional ability.
Judgment for costs in the amount of $1,045.84 is hereby entered against Inglis, for which sum let execution issue.
It is so ordered.
BOYD, C.J., and ADKINS, EHRLICH and SHAW, JJ., concur.
ALDERMAN, J., dissents with an opinion.
McDONALD, J., dissents.
ALDERMAN, Justice, dissenting.
I would approve the recommendation of the referee.