PER CURIAM.
Respondent seeks review of the referee’s order recommending that respondent be suspended from the practice of law for sixty days.[1]
Respondent was charged in two separate complaints with violating disciplinary rules of the Code of Professional Responsibility. The first, a one-count complaint,[2] alleged that respondent charged his clients interest upon interest on unpaid legal fees, in violation of Disciplinary Rule 1-102(A)(6) (engaging in conduct adversely reflecting on his fitness to practice law). The referee found respondent guilty in that case.
The second complaint[3] contained three counts. Count I alleged that respondent failed to adequately communicate with his clients concerning his billing, in violation of Disciplinary Rule 1-102(A)(6). Count II does not concern us as it was dismissed prior to hearing. Count III alleged that respondent attended a loan closing to represent his own interests while purporting to represent his client’s interests. That was alleged to be a violation of Disciplinary Rules 5-101(A) (accepting employment where the exercise of judgment may have been affected by his own interests, without consent of client after full disclosure); 5-104(A) (entering business relationship with client if client expects him to exercise professional judgment for client’s protection, without full disclosure); and 5-105(A) (failure to decline employment if conflict is likely). The referee found respondent not guilty of Count I and guilty of Count III in the second complaint. The referee recommended a sixty-day suspension for each of the two guilty counts, to run concurrently.
All of the charges stemmed primarily from respondent’s transactions with his clients, Frank and Winifred Antalek. Respondent had represented the Antaleks in various legal matters over a period of approximately fourteen years. We discuss below only the facts related to the two charges of which respondent was found guilty.
Beginning in or around 1983, the Antaleks claimed they began experiencing difficulty in interpreting the respondent’s bills. The Antaleks became delinquent in paying respondent’s fees, and respondent began charging interest at a rate of 1½% per month (18% APR) on their outstanding balance. Respondent had no prior agreement with the Antaleks to charge interest on any outstanding balance, nor were they notified of respondent’s intention to begin charging interest. Ultimately, respondent began charging interest on prior amounts billed, rather than principal alone. This *1329 resulted in interest on interest charges in excess of the statutory limit.
During that same period, the Anta-leks had problems keeping many of their accounts current, including loans, medical bills, and past due attorney’s fees. By letter dated July 25, 1986, the respondent advised the Antaleks to consider declaring bankruptcy to alleviate the stress caused by their mounting financial obligations. Instead, the Antaleks decided to seek a loan to pay off their obligations. The primary purpose for the loan was to pay off a home improvement loan held by the FDIC, which had begun foreclosure proceedings.
Respondent referred the Antaleks to a loan broker, and the Antaleks were successful in obtaining a loan. In anticipation of the closing, respondent prepared at least one closing document. In addition, respondent gathered payoff figures on the Anta-leks’ home loan. Respondent also included past due attorney’s fees of $5,240.03 on the settlement statement. Then, respondent attended the closing. Respondent did not obtain the Antaleks’ consent to deduct his past due legal fees out of any loan proceeds. He never advised the Antaleks to seek separate counsel; he gave no notice of his claim to attorney’s fees prior to the closing; and he gave no notice about any conflict of interest. Although surprised and angered when they discovered the attorney’s fees deduction on the day of the closing, the Antaleks elected to obtain the loan rather than face liability for broker’s fees and other expenses of the closing.
We find competent substantial evidence in the record to support the referee’s findings and conclusions of guilt. We also find no merit in any other claims raised by respondent.
We reject respondent’s contention that the recommended discipline is too harsh, because respondent to date still does not seem to understand that a conflict exists in representing clients at the closing of a loan while failing to advise those clients that he intended to deduct his past due legal fees from the proceeds.[4]
Accordingly, we approve - the referee’s recommendation to impose a sixty-day suspension. Respondent is hereby enjoined and prohibited from the practice of law in this state for sixty days, effective August 6, 1990, thereby giving respondent thirty days to take the necessary steps to protect his clients. Respondent shall accept no new business after the date of this opinion pending the successful completion of his suspension. Judgment for costs in the amount of $3,352.42 is hereby entered against respondent, for which sum let execution issue.
It is so ordered.
SHAW, C.J., and OVERTON, McDonald, ehrlioh, barkett, GRIMES and KOGAN, JJ., concur.

. We have jurisdiction pursuant to article V, section 15 of the Florida Constitution.

. Case No. 74,398.

. Case No. 73,629.

. We note that respondent had received a public reprimand in The Honda Bar v. Dunagan, 509 So.2d 291 (Fla.1987), but we do not consider it to be prior misconduct in aggravation of punishment pursuant to The Florida Bar v. Carter, 429 So.2d 3, 4 (Fla.1983).