PER CURIAM.
We have for review the referee’s report recommending that Walter Benton Duna-gan not be reinstated to the practice of law at this time, but that if he is reinstated he be placed under supervision. We have jurisdiction. Art. V, § 15, Fla. Const. For the reasons explained herein, we reinstate Dunagan with the condition that he serve a probationary period of one year.
In February 1999, Dunagan was suspended from the practice of law for ninety-one days. See Florida Bar v. Dunagan, 731 So.2d 1237 (Fla.1999). The suspension arose out of Dunagan’s representation of William Leucht against his wife, Paula, in divorce proceedings when Dunagan had previously jointly represented William and Paula Leucht in several matters.
On June 4, 1999, Dunagan filed a petition for reinstatement. At the end of Du-nagan’s case-in-chief at the final hearing, the Bar moved for a directed verdict and later filed a written motion for involuntary dismissal. Ultimately, the referee granted the Bar’s dismissal motion. After granting the motion for involuntary dismissal, the referee issued his report recommending that Dunagan not be reinstated to the Bar at this time, but that if he was reinstated that he be placed under supervision.
The referee’s recommendation was based on his findings that: (1) while suspended, Dunagan had improper direct contact with one client, remained attorney of record in five cases, and failed to understand that once he appeared as attorney of record in a case, he remained attorney of record until released by court order or by stipulation for substitution of counsel; (2) Dunagan failed to notify the publisher of Marquis’s Who’s Who in American Law and Lorman Education Services, a company for whom he lectured, of his suspension; (3) Dunagan disagreed with this Court’s finding that his representation of William Leucht constituted an impermissible conflict of interest; (4) Dunagan failed to correct deficiencies in his trust accounting procedures, failed to review the trust accounting rules since his suspension, and failed to demonstrate an understanding of the trust accounting rales until his practices were reviewed by the Law Office Management Assistance Service (LO-MAS); (5) Dunagan presented no evidence of post-suspension personal community service; and (6) Dunagan relied on others to advise him of his responsibilities under the Rules Regulating Florida Bar and took action only when a problem was pointed out to him by someone else.
In addition to his findings and recommendation that Dunagan not be reinstated to the Bar at this time, the referee also recommended that Dunagan be assessed “at a minimum the court reporter costs ($1,232.00) and Administrative costs ($750.00) for a total minimum assessment of $1,982.” The total costs incurred by the Bar were $4,603.33.
Dunagan seeks review of the referee’s findings and recommendation that he not *961 be reinstated, and the Bar seeks review of the referee’s recommendation that only a portion of its costs be assessed against Dunagan.
REINSTATEMENT
“In a reinstatement proceeding, the party seeking review of the referee’s recommendation has the burden to demonstrate that the report is erroneous, unlawful, or unjustified.” Florida Bar re Grusmark, 662 So.2d 1235, 1236 (Fla.1995). As to the referee’s findings of fact, they should be upheld unless clearly erroneous or without support in the record. See Florida Bar re Janssen, 643 So.2d 1065, 1067 (Fla.1994). “With regard to the referee’s legal conclusions and recommendations, the Court’s scope of review is wider because we have the ultimate responsibility to enter the appropriate judgment.” Grusmark, 662 So.2d at 1236.
The Bar called no witnesses and presented no evidence at the hearing and points to only portions of Dunagan’s testimony as support for the referee’s findings. Initially, we find that the findings regarding Dunagan’s failure to correct the deficiencies in his trust accounting procedures and his failure to review the trust accounting rules subsequent to his suspension are not supported by competent substantial evidence in the record. In his testimony, Dunagan admits that certain deficiencies were found by the LOMAS review and that he had not gone back to correct pre-suspension trust account records. We do not believe this supports a finding that Dunagan did not correct the deficiencies in his trust accounting procedures despite instructions from LOMAS. There is a difference between correcting one’s trust accounting procedures and altering previous trust account records. Further, the LO-MAS review took place during Dunagan’s suspension when he would not have been receiving client property or money to be placed into a trust account; thus, logically, he has not had a chance to implement the instructions from LOMAS.
We also conclude that the referee’s finding that “[i]t was apparent from Petitioner’s testimony that he had not reviewed the trust accounting rules since his suspension” is also unsupported in the record. Dunagan specifically testified that during the LOMAS review, the reviewer “[took] the rules for trust accounting and took them every one one at a time and went over each one to make sure that each one was complied with and I was fully informed as to every one.” The Bar presented no contrary evidence. Accordingly, we conclude these findings are unsupported by competent substantial evidence in the record.
Although we conclude that the remainder of the referee’s factual findings are supported by competent substantial evidence in the record, we do not agree with the referee that these findings are sufficient to justify denying Dunagan’s petition for reinstatement under the circumstances of this case. Certainly, we do not condone the careless attitude and conduct engaged in by Dunagan during his suspension. However, two factors sway our decision in favor of reinstatement. First, Dunagan correctly argues that it was improper for the referee to conclude that he had not been rehabilitated on the basis that he “still believed the Supreme Court of Florida was incorrect in finding his representation in The Florida Bar v. Dunagan, 731 So.2d 1237 (Fla.1999) ... constituted an impermissible conflict of interest.” [1] This conclusion is contrary to our holding in Florida Bar re Vernell, 520 So.2d 564 (Fla.1988). In Vemell, the Bar opposed the referee’s recommendation of *962 reinstatement on the basis that Vernell demonstrated malice and ill feelings toward those involved in bringing about the disciplinary proceedings. The Bar based this allegation on Vernell’s statements at the reinstatement hearing that he believed the Court’s decision to suspend him was legally incorrect. The Court found, however, that the record supported the referee’s conclusion that Vernell was remorseful, and further held that
Disagreement with a legal holding, in and of itself, is not evidence of malice. It is not uncommon that reasonable people disagree as to how a court disposes of a case without evidencing malice or ill-will towards the court. Frequently such disagreement arises within the court itself. We do not agree with the Bar that disagreement with this Court’s discipline ruling constitutes grounds for denying the petition for reinstatement.
Id. at 565. Accordingly, we find that Du-nagan’s good faith disagreement with the Court’s ruling should not be used as a ground for denying reinstatement.
Second and more importantly, we take into consideration the fact that Dunagan now has been suspended for more than six times the originally imposed period of suspension. We place substantial weight on our carefully considered original determination of the appropriate sanction in Bar discipline proceedings, and under the circumstances in this case conclude that reinstatement after such a lengthy suspension is appropriate. As a protective measure, however, we agree with the referee’s recommendation of continued supervision and impose a one-year period of probation.[2]
COSTS
The final discretionary authority to assess costs rests with this Court. See Florida Bar v. Lechtner, 666 So.2d 892, 894 (Fla.1996). However, Rule Regulating the Florida Bar 3-7.10(o)(2) provides that in reinstatement proceedings the referee shall have discretion to award costs and, absent an abuse of discretion, the referee’s award shall not be reversed. In the instant case, the referee recommended that Dunagan “be assessed at a minimum the court reporter costs ($1,232.00) and the Administrative costs ($750.00) for a total minimum assessment of $1,982.” The referee’s recommendation of costs is not the full amount incurred by the Bar; however, given the amount of time that it has taken to adjudicate this case and our decision to reinstate, we approve the referee’s recommended assessment of costs against Dpna-gan.
CONCLUSION
Accordingly, the petition for reinstatement is hereby granted, and Walter Benton Dunagan is reinstated to the practice of law with one year of probation, effective upon the issuance of this opinion. Judgment is entered in favor of The Florida Bar, 650 Apalachee Parkway, Tallahassee, FL 32399, for costs from Walter Benton Dunagan in the amount of $1,982.00, for which sum let execution issue.
It is so ordered.
SHAW, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
HARDING, J., dissents with an opinion, in which WELLS, C.J., concurs.

. The referee’s finding is apparently based upon Dunagan’s presentation of several ethics articles which could have been taken to indicate that he believed the Court's decision was incorrect. However, although Dunagan does not raise the issue of the sufficiency of the record support for this finding, a review of Dunagan's testimony shows that he accepts the Court's decision and is remorseful.

. The probation is subject to the following conditions: (1) that the respondent attend the Florida Bar’s Ethics School; and (2) that the respondent make his books and records available for inspection by The Florida Bar upon reasonable notice at any time during the one year of probation.