PER CURIAM.
We have for review a referee’s report recommending that Andrew R. McGraw be reinstated to the practice of law in Florida. We have jurisdiction. - See art. V, § 15, Fla. Const. For the reasons explained herein, we disapprove the referee’s recommendation that McGraw be reinstated.

FACTS

After conducting a full hearing, the referee issued a report making the following detailed findings of McGraw’s long procedural history before the Bar.

Criminal and Disciplinary History

In 1997, McGraw pled nolo contendere to a charge of misdemeanor battery and was sentenced to eleven months in jail. On March 25, 1997, this Court issued an order imposing an emergency suspension. Fla. Bar v. McGraw, 691 So.2d 1082 (Fla.1997) (table citation). Thereafter, McGraw was the subject of two additional disciplinary proceedings, in which he received suspensions. See Fla. Bar v. McGraw, 717 So.2d 540 (Fla.1998) (table citation) (imposing two-year suspension and requiring respondent to enter into a three-year contract with Florida Lawyers Assistance, Inc.); Fla. Bar v. McGraw, 718 So.2d 172 (Fla.1998) (table citation) (imposing ninety-one day suspension).
Pursuant to this Court’s orders, and upon release from jail, McGraw entered into a three-year contract with Florida Lawyers Assistance, Inc. (FLA). Among other requirements, he agreed to (1) totally refrain from the use of all mood altering substances, including alcohol; (2) report to FLA’s monitor, Stanley Spring, on a monthly basis; (3) participate in a twelve-step program; and (4) submit to random drug and alcohol tests. In violation of this agreement, in April 1998, McGraw tested positive for cocaine. Further, in January 1999, McGraw was charged with driving under the influence (DUI). He pled nolo contendere to the lesser offense of reckless driving.

First Petition for Reinstatement

In January 2000, McGraw filed his first petition for reinstatement to the Bar. McGraw failed to disclose the 1999 DUI charge in that petition. Also, in March 2000, a female employee at a retail store filed a police report stating that while she was working, McGraw grabbed her in an inappropriate manner. Although no criminal charges were filed, evidence indicated that McGraw had consumed alcoholic beverages preceding the incident.
In April 2000, Myer Cohen, the Executive Director of FLA, provided an affidavit detailing McGraw’s activities from August 1996 to April 2000. Mr. Cohen concluded that McGraw’s chemical dependency was not in sustained remission and that McGraw’s condition would impair his ability to practice law. After receiving Mr. Cohen’s affidavit, McGraw’s counsel sought and obtained a continuance of the reinstatement hearing.
Thereafter, on June 5, 2000, McGraw entered the Twelve Oaks Treatment Center for substance abuse treatment. He was released eighteen days later. In the medical discharge summary, the Medical Director for Twelve Oaks Treatment Center, Dr. Rick Beach, stated that McGraw’s prognosis for abstinence from alcohol and drugs was extremely poor and also expressed serious reservations concerning McGraw’s return to the practice of law.
In December 2000, at the final hearing on the first petition for reinstatement, McGraw presented the referee with another three-year FLA contract, which was dated December 5, 2000. Although the contract was dated and signed by Mr. Cohen and McGraw, McGraw had not submitted the executed agreement to FLA. Next, in January 2001, before the referee finalized his report, McGraw tested positive for *907 cocaine during a random drug test. The Bar moved for an evidentiary hearing before the referee. In response, McGraw submitted a sworn affidavit to the referee stating under oath that he had not used cocaine since 1997. Yet, in March 2001, McGraw withdrew his first petition for reinstatement, and the referee recommended that the petition for reinstatement be dismissed. This Court entered an order on November 21, 2001, approving the referee’s report.

Second Petition for Reinstatement

In July 2001, McGraw signed still another FLA contract, which was to extend from July 2001 to July 2003. A year later, in July 2002, McGraw submitted a second petition for reinstatement. Two months later, in September 2002, McGraw voluntarily entered Health Care Connection (HCC), a chemical dependency treatment program. Upon arrival at HCC, McGraw tested positive for cocaine and HCC employees observed beer bottles in the trunk of his car. Further, according to McGraw’s HCC counselor, McGraw stated “that he wanted to ‘tuck himself away from society for approximately two months’ so that he did not have any client contact as an attorney, get a speeding ticket, or something like that for the next two months before he has a chance of getting his law license back.” McGraw remained at HCC from September 2002 until he was discharged in January 2003.
With regard to the second petition for reinstatement, an affidavit of Judy Rush-low, Assistant Director of FLA, dated November 2002, was filed and outlined that McGraw had been under contract with FLA since August 1996. Ms. Rushlow indicated that random drug and alcohol tests were conducted monthly from January 2001 through July 2002. Within that period, from May 2001 through April 2002, McGraw missed nine days of random drug and alcohol tests. Further, in September 2002, McGraw had telephoned Ms. Rush-low and had stated that he was entering HCC. McGraw did not provide Ms. Rush-low with any explanation for this decision. In early 2003, McGraw signed yet another FLA contract, extending from January 2003 to January 2008.
While investigating McGraw’s second petition for reinstatement, the Bar discovered that McGraw had failed to disclose, in both his first and second petition for reinstatement, the existence of two final judgments against him. In September 1996, a final judgment was entered against him for past rent and related costs in the amount of $926.50. As of December 2002, McGraw had not satisfied the final judgment. Next, McGraw had failed to disclose a delinquent student loan. Based upon this student loan, a final judgment in the amount of $16,806.80 had been entered against him.
Further, in June 2003, McGraw violated the terms of his latest FLA contract. Pursuant to the terms of the FLA contract, McGraw was required to attend an Alcoholics Anonymous (AA) meeting each day. On Thursday morning, June 12, 2003, McGraw did not attend a 7:30 a.m. meeting and all efforts to contact him were unsuccessful. Finally, on Monday, June 16, 2003, McGraw called his monitor, Mr. Spring, and asserted that he had gone out of town and lost his cell phone. Further, Mr. Spring discovered that McGraw had failed to call for the FLA required drug and alcohol tests on Thursday and Friday, June 12 and 13. Also, Mr. Spring had been informed by a credible source that McGraw had been consuming alcohol and that McGraw had advised people who were familiar with his situation that he had permission to do so. McGraw denied the allegations.
Based on Mr. Spring’s report about these events, FLA Director Cohen wrote *908 McGraw in June 2003 and terminated his FLA contract. Mr. Cohen stated that McGraw’s unwillingness to comply with the terms of his FLA contract indicated that the inordinate amount of time FLA had spent on his case simply represented an exercise in frustration. Mr. Cohen removed McGraw from the drug and alcohol testing program.
In regard to McGraw’s struggle for sobriety, HCC Director Timothy Sweeney, who was deposed while the second petition for reinstatement was pending, stated that McGraw “needs to clock some more clean time.” Mr. Sweeney recommended against McGraw being reinstated because he believed that McGraw still has serious problems with chemical dependency.
Further, Ms. Rushlow stated in a second affidavit, dated July 2003, that the pertinent provisions of McGraw’s recently terminated FLA contract were that he would (1) abstain from the consumption of all mood-altering substances, including alcohol; (2) reside in a halfway house for a period of time to be determined by HCC; (3) regularly attend AA meetings as well as attorney support meetings; and (4) comply with a system for random drug and alcohol testing. Ms. Rushlow reported that in February 2003, McGraw left the halfway house without discussing the matter with anyone at HCC or FLA. Also, Ms. Rushlow established that in July 2003, Mr. Spring filed a monitor report stating that McGraw was noneompliant with his contract because he had failed to comply with the random drug and alcohol testing and failed to meet his twelve-step requirements, and there were reports that McGraw had been consuming alcohol and had lied by representing that FLA now permitted him to drink alcohol. As a result of Mr. Spring’s reports, FLA concluded that McGraw was not fit for reinstatement to the Bar.
After the final hearing on the second petition for reinstatement, McGraw submitted a September 2003 affidavit from his FLA monitor, Mr. Spring, which was in conflict with FLA’s official positions and Mr. Spring’s previous reports. Mr. Spring’s new affidavit stated (1) Mr. Spring and McGraw attended a FLA workshop together and that McGraw’s participation was exemplary; (2) McGraw chaired at least one meeting at the workshop; (3) since the workshop, McGraw worked closely with Mr. Spring and spoke with him virtually every single day; (4) McGraw’s attitude towards his recovery program was excellent, and it was obvious that he was enjoying his work for his father, an attorney; and (5) based on Mr. Spring’s continued close interaction with McGraw since the final hearing, and taking into account that even after FLA terminated his contract, McGraw continued to work closely with Mr. Spring, Mr. Spring had changed his position and now concluded that McGraw should be reinstated.
In response to Mr. Spring’s new affidavit, the Bar submitted an additional affidavit from Ms. Rushlow, dated September 22, 2003, which stated: (1) McGraw’s January 2003 contract with FLA was terminated by FLA due to McGraw’s noncompliance, and no random drug and alcohol testing or monitoring had been accomplished by FLA since that termination; (2) Mr. Spring’s affidavit was based only on his own opinions and did not represent FLA’s position; (3) FLA’s opinion regarding McGraw’s fitness for reinstatement was unchanged; and (4) based on several years experience with McGraw, FLA was of the view that he should not be reinstated until he is able to strictly comply with a one-year rehabilitation program.

Referee’s Recommendations

The referee recognized in his report that McGraw’s two incidences of insobriety prevented his satisfactory completion of the *909 HCC program, but that McGraw had satisfied many aspects of the program before FLA terminated the contract. The referee noted that McGraw admitted, using cocaine from April 1998 through September 2002, but that there was no evidence McGraw possessed or used any nonpres-cribed controlled substances since his entry into HCC in September 2002. Further, McGraw had actively participated in a twelve-step program. The referee reported that McGraw had also actively participated in a program of recovering professionals, including attendance at not less than one attorney support meeting per week. McGraw had also assisted with the establishment of an additional attorney support meeting in Pensacola. The referee noted that McGraw had attended the FLA Annual Workshop, which occurred subsequent to the final hearing and after FLA terminated the January 2003 contract. The referee did recognize, however, that McGraw struggles with his alcohol and drug dependency, and noted that McGraw has made significant strides in dealing with his addiction and recovery. It is important to note, however, that the referee specifically found that McGraw had been untruthful in his testimony. The referee also found that McGraw failed to include required and relevant information regarding financial issues in his petitions. Further, even as recently as June 2003, McGraw had not been completely forthcoming with his monitor, Mr. Spring, about his sobriety and whereabouts. Thus, the referee was concerned with McGrav/s history of deception.
After considering numerous aspects of this extensive case, the referee recommended that McGraw be reinstated to the Bar, subject to a three-year probationary period. The Florida Bar petitioned for review of the referee’s report.

ANALYSIS

A petitioner seeking reinstatement to The Florida Bar must establish by clear and convincing evidence that he has met the criteria set forth in Rule Regulating the Florida Bar 3-7.10, “Reinstatement and Readmission Procedures,” and the decisions of this Court. See In re Wolf, 257 So.2d 547 (Fla.1972). The factors in Wolf are similar to those set forth in rule 3-7.10(f), regarding reinstatement factors and procedures.[1]
*910 On review in connection with a reinstatement proceeding, “the party seeking review of the referee’s recommendation has the burden to demonstrate that the report is erroneous, unlawful, or unjustified.” Fla. Bar re Dunagan, 775 So.2d 959, 961 (Fla.2000) (quoting Fla. Bar re Grusmark, 662 So.2d 1235, 1236 (Fla.1995)). Thus, in the instant case, the burden is on the Bar to demonstrate that the referee’s recommendation is erroneous or unjustified. Further, with “regard to the referee’s legal conclusions and recommendations, the Court’s scope of review is wider because we have the ultimate responsibility to enter the appropriate judgment.” Id. (quoting Grusmark, 662 So.2d at 1236); see also Fla. Bar re Inglis, 471 So.2d 38 (Fla.1985).
The Bar argues that clear and substantial evidence in the record demonstrates that McGraw is not fit to return to the practice of law. McGraw has an extensive history of cocaine and alcohol abuse. He has failed to comply with numerous FLA contracts. He has also failed to appear for several drug/alcohol screens. The Bar further argues that McGraw’s deceitful conduct alone, during the reinstatement proceedings, demonstrates that he lacks moral character and fitness. The Bar asserts that these are crucial elements to resuming a position of trust and confidence among the ethical practitioners of the Bar.. According to the Bar, McGraw has continued to display a lack of truthfulness and honesty, which should prevent him from being reinstated.
We agree with the Bar. With due respect to the referee and his extensive work with this most unfortunate situation, the facts of the instant case demonstrate that McGraw simply has not satisfied the criteria for reinstatement. The criteria for reinstatement include a petitioner’s strict compliance with the specific conditions of a previous disciplinary order. See Wolf, 257 So.2d at 548-49. Pursuant to McGraw’s *911 second disciplinary case, see 717 So.2d at 540, he was specifically required to complete a three-year contract with FLA. Since 1997, McGraw has totally failed to comply with any one of his numerous FLA contracts due to his cocaine use and alcohol abuse. He tested positive for cocaine in April 1998, January 2001, and September 2002. He also admitted that he used crack cocaine from April 1998 through September 2002. Further, during the period of the FLA contracts, McGraw also consumed alcohol, contrary to the requirements with regard to his behavior (DUI arrest in January 1999; alcohol involved when he harassed the beach store employee in March 2000; beer bottles in trunk at HCC in September 2002; witnesses saw him drinking beer on two occasions around June 2003). McGraw also disappeared for several days in June 2003, when he allegedly went out of town. He missed two possible drug and alcohol tests during that purported trip.
During the course of his most recent FLA contracts (from May 2001 through April 2002), McGraw failed to attend a total of nine random drug and alcohol tests. Further, since FLA terminated his last contract for noncompliance, McGraw has not been subject to drug and alcohol testing since June 2003. After working with McGraw, both FLA and HCC officially recommended that McGraw not be reinstated because he has not demonstrated that he is fit to resume the practice of law.
In considering whether McGraw should be reinstated, Florida Bar v. Liroff, 582 So.2d 1178 (Fla.1991), provides guidance. Initially, Liroff was privately reprimanded for engaging in conduct adversely reflecting on his fitness to practice law. Liroff s misconduct arose from his addiction to a synthetic opiate cough' syrup. This Court ordered Liroff to undergo treatment recommended by FLA. Thereafter, the Bar initiated a subsequent case against Liroff for failing to adhere to the conditions of probation. The Court agreed with the Bar, found Liroff in contempt, and suspended him for sixty days. When considering Liroffs failure to comply with the terms of probation, the Court stated that the standard
is not merely that the attorney presently suffers no addiction. Serious impairment — perhaps resulting in serious harm to a client — can occur in a single episode, without the attorney ever actually becoming addicted again.
More to the point, an attorney previously addicted to impairing substances is under a continuing obligation to comply with the terms of probation imposed by this Court, including good-faith compliance with treatment programs administered by FLA. Even a single episode of substance abuse is a violation of this obligation, whether or not renewed “addiction” results. Impaired attorneys are a serious problem that this Court takes very seriously.
Id. at 1179-80. McGraw has failed to meet this standard, due to his unfortunate, egregious lapses in sobriety. He has tested positive for cocaine and consumed alcohol during periods when he should have been on his finest behavior. He has also missed several drug and alcohol tests. Further, McGraw has failed to comply with a single FLA contract. The record demonstrates that McGraw still has serious problems with refraining from the use of illegal drugs and alcohol. Thus, McGraw has totally failed to comply with the conditions set forth by this Court’s previous order.
The record also demonstrates that McGraw has failed to meet another fundamental element for reinstatement, that is, providing evidence of unimpeachable character and moral standing. See Wolf, 257 *912 So.2d at 548-49. In In re Dawson, 131 So.2d 472 (Fla.1961), this Court stated:
In the ultimate, we will look to the evidence in each case to ascertain whether it supports a conclusion that the errant lawyer has so conducted himself personally ... to justify a conclusion that he has repented of his misdoings, that the disciplinary order has impressed him with the vital importance of ethical conduct in the practice of law, and that he is morally equipped to resume a position of honor and trust among the ethical practitioners at the Bar. This is the pattern which an applicant for reinstatement must fit.
Id. at 474.
McGraw has repeatedly engaged in misrepresentations to the referee and others. First, McGraw testified before the referee in December. 2000 that the drug test of April 1998, which was positive for cocaine, was incorrect. McGraw claimed that he never used cocaine, only to later admit that he was using cocaine during that period of time. Second, when McGraw tested positive for cocaine in January 2001, he submitted a sworn affidavit to the referee testifying that he had not used cocaine. He later admitted that this was also a misrepresentation. Third, McGraw failed to disclose the existence of two final judgments entered against him. Fourth, in September 2002, upon admission to HCC, McGraw lied to HCC doctors and staff that he had been clean and sober for two years. When he arrived at HCC, he tested positive for cocaine and empty beer containers were in his car. Fifth, in June 2003, McGraw lied to others that he had permission to drink alcohol and he lied to his monitor, Mr. Spring, by claiming that he had not been consuming alcohol. The referee found that he could not rely on McGraw’s credibility due to McGraw’s history of deception. See Fla. Bar re Jahn, 559 So.2d 1089, 1090 (Fla.1990) (finding a lack of good moral character includes acts and conduct that would cause a reasonable person to have substantial doubts about an individual’s honesty). Based on the record, McGraw has failed to demonstrate that he has unimpeachable character and moral standing.
The referee in this case was very conscientious and provided an exceptional report, detailing extensive facts and outlining numerous aspects of McGraw’s activities. We extend our appreciation to the referee for providing such an exemplary report and for taking the time necessary to explore and reveal the numerous issues presented in the web woven by this case. Also, we understand and recognize the difficulties encountered in the life of an addict and recognize that human compassion is crucial and necessary in the healing process. However, this Court must abide by a higher calling and protect the members of the public by demanding and requiring the utmost in professional standards for attorneys. See Fla. Bar v. Cox, 794 So.2d 1278 (Fla.2001); Fla. Bar v. Cibula, 725 So.2d 360 (Fla.1998). McGraw continues in the battle against returning to the use of illegal drugs or alcohol. He was even consuming alcohol within weeks of his final hearing. Further, experts intimately familiar with attorney substance abuse problems, who were either treating McGraw or completely familiar with his situation, stated that he is not yet ready to resume the practice of law. Thus, based on the record, the criteria for reinstatement, and case law, we conclude that the referee’s recommendation of reinstatement is erroneous and cannot be upheld.

CONCLUSION

Accordingly, we disapprove the referee’s recommendation that McGraw be reinstated; Andrew R. MeGraw’s petition for reinstatement is denied.
*913 Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Andrew R. McGraw in the amount of $12,968.50, for which sum let execution issue.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.

. Rule 3-7.10(f) provides, in part, the following factors.
(1)Disqualifying Conduct. A record manifesting a deficiency in the honesty, trustworthiness, diligence, or reliability of a petitioner may constitute a basis .for denial of reinstatement. The following shall be considered as disqualifying conduct:
(A) unlawful conduct;
(B) academic misconduct;
(C) making or procuring any false or misleading statement or omission of relevant information, including any false or misleading statement or omission on any application requiring a showing of good moral character;
(D) misconduct in employment;
(E) acts involving dishonesty, fraud, deceit, or misrepresentation;
(F) abuse of legal process;
(G) financial irresponsibility;
(H) neglect of professional obligations;
(I) violation of an order of a court;
(J) evidence of mental or emotional instability;
(K) evidence of drug or alcohol dependency;
(L) denial of admission to the bar in another jurisdiction on character and fitness grounds;
(M) disciplinary action by a lawyer disciplinary agency or other professional disciplinary agency of any jurisdiction; and
(N) any other conduct that reflects adversely upon the character or fitness of the applicant.
(2) Determination of Character and Fitness. In addition to other factors in making this determination, the following factors should be considered in assigning weight and significance to prior.conduct:
(A) age at the time of the conduct;
(B) recency of the conduct;
*910 (C) reliability of the information concerning the conduct;
(D) seriousness of the conduct;
(E) factors underlying the conduct;
(F) cumulative effect of the conduct or information;
(G) evidence of rehabilitation;
(H) positive social contributions since the conduct;
(I) candor in the discipline and reinstatement processes; and
(T) materiality of any omissions or misrepresentations.
(3) Elements of Rehabilitation. Any petitioner for reinstatement from discipline for prior misconduct shall be required to produce clear and convincing evidence of such rehabilitation including, but not limited to, the following elements:
(A) strict compliance with the specific conditions of any disciplinary, judicial, administrative, or other order, where applicable;
(B) unimpeachable character and moral standing in the community;
(C) good reputation for professional ability, where applicable;
(D) lack of malice and ill feeling toward those who by duty were compelled to bring about the disciplinary, judicial, administrative, or other proceeding;
(E) personal assurances, supported by corroborating evidence, of a desire and intention to conduct one’s self in an exemplary fashion in the future;
(F) restitution of funds or property, where applicable;
(G) positive action showing rehabilitation by such things as a person’s occupation, religion, or community or civic service.
Merely showing that an individual is now living as and doing those things that should be done throughout life, although necessary to prove rehabilitation, does not prove that the individual has undertaken a useful and constructive place in society. The requirement of positive action is appropriate for persons seeking reinstatement to the bar as well as for applicants for admission to the bar because service to one's community is an essential obligation of members of the bar.