593 So.2d 1219 (1992)
KENN AIR CORP., a Florida Corporation, Petitioner,
v.
GAINESVILLE-ALACHUA COUNTY REGIONAL AIRPORT AUTHORITY, Respondent.
No. 91-1664.
District Court of Appeal of Florida, First District.
February 25, 1992.
*1220 Dana G. Bradford, II, Steven E. Brust, of Baumer, Bradford, Walters & Liles, P.A., Jacksonville and Ronald A. Carpenter, Lucy Goddard, of Carpenter & Goddard, P.A., Gainesville, for petitioner.
Leonard E. Ireland, Jr., of Clayton, Johnston, Quincy, Ireland, Felder, Gadd, Smith & Roundtree, Gainesville and Stephen J. DeMontmollin, Gainesville, for respondent.
ERVIN, Judge.
Petitioner, Kenn Air Corp., filed its petition for writ of certiorari seeking review of an order entered by the circuit court in Kenn Air's pending action against respondent, Gainesville-Alachua County Regional Airport Authority (GACRAA),[1] which denied Kenn Air's motion to disqualify GACRAA's attorney, Leonard E. Ireland, Jr., and his law firm, Clayton, Johnston, Quincy, Ireland, Felder, Gadd, Smith & Roundtree, from the action. We agree with petitioner that the lower court's order constitutes a departure from the essential requirements of law for which no adequate remedy on appeal exists. We therefore grant the petition and issue the writ.
In 1986 the City of Gainesville (City) sued Kenn Air's predecessor-in-interest, Charter Leasing Corp. (Charter), in connection with a dispute over a lease under which Charter was a tenant of the City at the Gainesville-Alachua County Regional Airport. Charter operated a fixed-base operation (FBO), providing fuel and general aviation services to private aircraft. The suit involved an area called "the hill" and surrounding property located on Charter's leasehold which the City claimed it was entitled to improve under its lease with Charter. Charter protested the improvement, and engaged Leonard E. Ireland, Jr. (Ireland), to defend it in the action. Ireland, on behalf of Charter, reached an agreement with the City to permit its agents to enter the premises and remove the hill. The parties' agreement expressly reserved Charter's right to seek damages in connection with the City's construction efforts.
After the City made the improvements, Ireland filed a counterclaim on behalf of Charter against the City for damages associated with the City's redevelopment of the leasehold. It was alleged that Charter was entitled to damages because the City's improvements (1) hindered Charter's ability to locate properly sized T-hangars for servicing its customers, (2) diverted the flow of water from a nearby creek onto Charter's premises, resulting in a retention area which limited its ability to place the T-hangars on its premises, (3) took property without just compensation, and (4) destroyed two buildings during removal of the hill. The case was eventually voluntarily dismissed without prejudice, pursuant to joint stipulation of the parties.
On March 4, 1988, Kenn Air acquired the rights and interests of Charter by virtue of its purchase from the United States Bankruptcy Court, Northern District of Florida, of all of Charter's tangible and intangible assets. Pursuant to the bill of sale, Kenn Air acquired Charter's leasehold interest in, leasehold improvements on, and contract rights to Charter's leases at the airport, as well as all causes of action attendant thereto.
Kenn Air filed suit in September 1989 against GACRAA seeking declaratory relief and damages associated with GACRAA's revision of the rules and regulations governing FBOs.[2] Specifically, Kenn Air alleged that the revisions were carried *1221 out in bad faith and in complete derogation of Kenn Air's rights under the lease which it had obtained from the Charter purchase. Moreover, Kenn Air claimed that GACRAA's revisions, to the detriment of Kenn Air, were consistent with GACRAA's and the City's long-standing pattern of bad faith and preferential treatment of various FBOs at the airport. In November 1989, after determining that the damages associated with the City's redevelopment of the then Charter-leased property were severe, Kenn Air filed an amended complaint adding two counts, wherein it sought damages and inverse condemnation associated with the City's actions regarding the hill property in 1986.
GACRAA engaged Mr. Ireland and his firm to represent it in the action. When Ireland first made an appearance on behalf of GACRAA, Kenn Air was unaware of his involvement in the 1986 hill litigation and thus did not initially object to his representation. During the course of reviewing Charter's business records, Kenn Air's president, Kenneth Brown, discovered Ireland's participation in the earlier litigation. Brown also discovered other documents and business records disclosing that Ireland, as attorney for Charter, was also involved in other lawsuits against the City, each involving disputes over various lease agreements.
After fully reviewing all of Charter's litigation and correspondence files in the above matters, Kenn Air's counsel wrote to Ireland and requested that he disqualify himself and his firm from the present litigation. When Ireland refused, Kenn Air filed its motion to disqualify pursuant to Rules 4-1.6, 4-1.7, 4-1.9, and 4-3.7 of the Rules Regulating The Florida Bar. Kenn Air alleged that it was the successor-in-interest to Charter and that one of the substantial matters to be litigated in the action was whether Kenn Air was entitled to damages for "reconfiguration" of the leasehold premises known as the hill, an issue which was similar to that involved in the action Ireland brought on behalf of Charter in 1986. Consequently, Kenn Air alleged that an irrebuttable presumption existed that client confidences were disclosed to Ireland during the course of his representation of Charter, Kenn Air's predecessor-in-interest, and that such confidences could be used to the detriment of Kenn Air if Ireland continued as counsel for GACRAA, which would be an impermissible unfair advantage. Additionally, Kenn Air contended that Ireland acquired knowledge of material facts and circumstances in his prior representation of Charter in numerous other disputes against the City regarding FBO leaseholds, and that the prior Charter actions were substantially similar to the claims set out in Kenn Air's complaint.
The matter came on for hearing, and following the submission of evidence, including Charter's litigation files, the trial court entered the order denying Kenn Air's motion to disqualify Ireland and his firm. In so doing the court found that no ethical violation had occurred and no relationship existed between Ireland and Kenn Air which would require granting the motion to disqualify. Kenn Air now seeks certiorari review of that order.
The requisites to the issuance of a writ of certiorari are that the petitioner demonstrate that the lower court exceeded its jurisdiction in rendering the order or that the order does not conform to the essential requirements of law and may cause material injuries in subsequent proceedings for which remedy by appeal will be inadequate. Ford Motor Co. v. Edwards, 363 So.2d 867, 869 (Fla. 1st DCA 1978). Orders granting or denying motions to disqualify a party's attorney may be appropriately reviewed by certiorari. See, e.g., Jenkins v. Harris Ins., Inc., 572 So.2d 1011 (Fla. 1st DCA 1991); Campbell v. American Pioneer Sav. Bank, 565 So.2d 417 (Fla. 4th DCA 1990); Ford v. Piper Aircraft Corp., 436 So.2d 305 (Fla. 5th *1222 DCA 1983), review denied, 444 So.2d 417 (Fla. 1984); Sears, Roebuck & Co. v. Stansbury, 374 So.2d 1051 (Fla. 5th DCA 1979).
Rule 4-1.6 of the Rules Regulating The Florida Bar provides that, except in limited circumstances not applicable here, "[a] lawyer shall not reveal information relating to representation of a client ... unless the client consents after disclosure to the client." The comment to this rule states that the rule of confidentiality applies not only to matters communicated in confidence by the client but to all information relating to the representation, whatever its source, and that the duty of confidentiality continues after the client-lawyer relationship is terminated. Requiring the disqualification of an attorney under this rule is, however, a matter of no small consequence. Ford, 436 So.2d at 307; Sears, 374 So.2d at 1053. Therefore, before a party's former attorney can be disqualified from representing a party whose interests are adverse to those of the former client, the former client must show that the matters embraced in the pending suit are substantially related to the matters in which the attorney previously represented him or her, the former client. Ford, 436 So.2d at 307; Sears, 374 So.2d at 1053.
The threshold question then is whether an attorney-client relationship existed. It is undisputed that no attorney-client relationship has ever existed between Kenn Air and Ireland. The question next to be answered is whether Kenn Air may "stand in the shoes" of Charter, Ireland's former client, in order to have standing to make the motion for disqualification. Kenn Air makes several arguments in support of its position that it possessed standing, only one of which we consider has merit.
Kenn Air asserts a violation of rule 4-1.9, which provides that a lawyer who has formerly represented a client in the matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interest of the former client unless the former client consents after consultation. The rule also prohibits the attorney from using information relating to the representation of a former client to the disadvantage of the former client. This rule is aimed at the problem of attorneys "switching sides," and arises because the duty of confidentiality under rule 4-1.6 protects all confidences and information obtained during representation of a client, and because this duty continues even after the attorney-client relationship is terminated. See T.C. Theatre Corp. v. Warner Bros. Pictures, 113 F. Supp. 265, 268 (S.D.N.Y. 1953) (lawyer's obligation of absolute loyalty to his or her client's interest does not end with the retainer; the lawyer is enjoined for all time, except when released by law, from disclosing matters revealed by reason of the confidential relationship with the lawyer's client). And see generally Rosenfeld Constr. Co. v. Superior Court of Fresno County, 235 Cal. App.3d 566, 286 Cal. Rptr. 609, 612-13 (1991).
As to the question of Kenn Air's standing, the comment to rule 4-1.9 references the comment to rule 4-1.7, which recognizes that someone other than a client or former client may move for disqualification in instances involving conflicts of interest in simultaneous representations. That circumstance exists when the conflict is clear and the question of fair and efficient administration of justice is raised. Because switching sides and conflict of interest in simultaneous representation are two ethical violations that can be clearly seen by persons other than clients, we extend the standing rule set out in State Farm Mutual Automobile Insurance Co. v. K.A.W., 575 So.2d 630 (Fla. 1991) (holding that an insurance company could "stand in the shoes" of its insured for the purpose of seeking disqualification of the opposing party's attorney when there existed simultaneous representation of parties with conflicting interests), to the situation at bar and therefore afford Kenn Air standing to raise the motion for disqualification.
*1223 As to the merits of the motion, it is undisputed that Ireland had a long-standing relationship with Charter regarding its leases at the airport. Thus, an irrebuttable presumption arises that Charter disclosed confidences to Ireland during that representation. To allow Ireland to represent a successor of his former client's adversary in a matter which appears to be substantially related[3] to that in which Ireland previously represented the former client, Charter, creates the appearance that Ireland has switched sides.
Upon consideration of the public's perception of the integrity of the bar, and the appearance of impropriety that arises in situations in which an attorney switches sides, we conclude that the trial court departed from the essential requirements of law by denying Kenn Air's motion for disqualification under the circumstances.[4]See Campbell v. American Pioneer Sav. Bank, 565 So.2d 417 (Fla. 4th DCA 1990) (disqualification based on appearance of impropriety was proper in mortgage foreclosure proceeding where petitioner showed that respondent's current attorney had previously represented petitioner in matters concerning the real property at issue and involving a conveyance that was relevant to the foreclosure); Ford v. Piper Aircraft Corp., 436 So.2d 305 (Fla. 5th DCA 1983) (attorney who represented FIT Aviation in one action, and who then filed a suit on behalf of another client, which subsequently resulted in FIT being named as a party defendant, was disqualified from representing the plaintiff in the second suit), review denied, 444 So.2d 417 (Fla. 1984).
We also conclude that any remedy available to Kenn Air from an appeal of a final adverse order would be inadequate due to the fact that Ireland's informational advantage, obtained through his earlier representation of Charter, could cause material injuries to Kenn Air at any subsequent proceedings.
The petition for writ of certiorari is GRANTED and the case is remanded with directions to grant petitioner's motion to disqualify.
BARFIELD and ALLEN, JJ., concur.
NOTES
[1] Kenn Air Corp. v. Gainesville-Alachua County Regional Airport Authority, No. 89-2735-CA, (Fla. 8th Cir.Ct. filed Sept. 1989).
[2] GACRAA is a statutorily-created body which has been authorized by the City to operate, maintain, and control the airport and its facility since 1987. Prior to the creation of GACRAA, the City had negotiated its own commercial leases and was solely responsible for overseeing and enforcing the governing rules and regulations for FBOs.
[3] Our review of Charter's 1986 hill counterclaim and petitioner's current complaint convinces us that the two actions are substantially similar. For example, as previously stated, Charter's counterclaim filed by Ireland in the 1986 action alleged that the City had breached its lease agreement with Charter by building a road over its property, which adversely affected Charter's ability to build T-hangars on the property; that the City had diverted the flow of a creek and created a retention pond on the leased premises, which limited Charter's ability to build T-hangars on the premises; and that the City had taken property on the hill and destroyed buildings owned by Charter which were located on the hill without just compensation. Kenn Air's second amended complaint in the present action similarly alleges that the defendant breached the lease in regard to the hill property by causing a drainage retention pond to adversely affect the use and occupancy of the property; by developing a portion of the property in such a way as to make it no longer useful to Kenn Air; and by "reconfiguring" the leasehold, including removal of the hill, so as to constitute an unlawful taking without just compensation.
[4] In so saying we specifically do not rule on whether a violation of rule 4-1.9 has occurred. Actual violation of the ethics rules is not a prerequisite to the granting of a motion for disqualification to avoid the appearance of impropriety. See State Farm, 575 So.2d at 634. See also SMI Indus. Canada Ltd. v. Caelter Indus., Inc., 586 F. Supp. 808, 817 (N.D.N.Y. 1984).