731 So.2d 1237 (1999)
THE FLORIDA BAR, Complainant,
v.
Walter Benton DUNAGAN, Respondent.
No. 91,753.
Supreme Court of Florida.
February 11, 1999.
Rehearing Denied May 21, 1999.
*1238 John F. Harkness, Jr., Executive Director, and John Anthony Boggs, Staff Counsel, Tallahassee, Florida, and Jan K. Wichrowski, Bar Counsel, Orlando, Florida, for Complainant
Michael L. Ramos, Daytona Beach, Florida, for Respondent
PER CURIAM.
We have for review the complaint of The Florida Bar and the referee's report regarding alleged ethical breaches by Walter Benton Dunagan. We have jurisdiction. Art. V, § 15, Fla. Const.
After a formal hearing in this matter, the referee found the following facts. In July 1992, Dunagan prepared a bill of sale purporting to transfer certain assets of a restaurant business, "Biscuits `N' Gravy `N' More" ("B & G"), to the joint ownership of William and Paula Leucht. Dunagan also prepared the fictitious name filing for this business but, according to a letter sent by him to the Leuchts, inadvertently omitted Paula Leucht's name on the registration form.
Subsequently, a commercial lease dispute arose between B & G and Bay-Walsh Properties (Florida) Inc., d/b/a/ Nova Village Market Partnership ("Bay-Walsh"). The suit filed by Bay-Walsh named B & G, William Leucht, and Paula Leucht as defendants. Dunagan represented B & G and the Leuchts in this action and specifically moved to dismiss Paula Leucht as a improper party to the suit.[1]
Later in 1994, Dunagan was involved in negotiations between the Leuchts and a *1239 third party to open another B & G restaurant in Daytona Beach and, in 1994 and 1995, also represented B & G and the Leuchts in an eminent domain suit against the Florida Department of Transportation.
On or about February 23, 1996, Dunagan sent a letter to the Port Orange Police Department and city attorney in which he stated that he represented William Leucht, that William Leucht was the sole owner of B & G, and that although there was a bill of sale which was "considered to put the business in the name of William and Paula Leucht," this "instrument and the legal consequences thereof were duly considered, and it was determined with deliberation that William Leucht would remain the sole owner." The letters further advised that Mr. Leucht intended to fire two employees, after which they would no longer be welcome on the premises of the restaurant, and that if they entered the premises, they would be ejected. The letters purported to notify the police "in order to prevent a breach of the peace from occurring."
Several days after sending these letters, Dunagan filed a petition for dissolution of marriage on behalf of William Leucht against Paula Leucht. A few days later, Paula Leucht called B & G restaurant and was told by an employee that William Leucht was the sole owner and she could not come to the restaurant. Ms. Leucht went to the restaurant anyway and was arrested for disorderly conduct and forcibly removed from the premises. Prior to, during, and after her arrest, Ms. Leucht informed the police that she co-owned the restaurant.
Finally, on May 2, 1996, the judge in the divorce proceeding ordered that William and Paula Leucht were to share equally in the net proceeds from both B & G restaurants, and on October 31, 1996, Dunagan filed a motion to withdraw from representation of William Leucht in the divorce proceeding after Paula Leucht hired an attorney to file a malpractice lawsuit against him.
After making these factual findings, the referee recommended Dunagan be found guilty of violating rules 4-1.7(a)(prohibiting representation of a client when such representation will be directly adverse to the interests of another client); 4-1.7(b)(prohibiting representation of a client when the lawyer's exercise of independent professional judgment may be materially limited by the lawyer's responsibilities to another client, a third person, or the lawyer's own interest); 4-1.9(a)(prohibiting representation of a client whose interests are materially adverse to a former client in the same or a substantially related matter);[2] 4-1.9(b)(prohibiting use of information relating to the representation of a former client to his or her disadvantage); and 4-1.16(a)(requiring an attorney to decline representation of a client where the representation will result in a violation of the Rules of Professional Conduct or law) of the Rules Regulating The Florida Bar. The referee recommended that Dunagan be suspended for ninety-one days and costs be taxed against him in favor of The Florida Bar. Dunagan seeks review of the referee's findings and recommendation.

I. Conflict of Interest
Dunagan first argues that the referee erred in finding that his representation of William Leucht in the divorce proceeding after having jointly represented William and Paula Leucht in matters relating to their business presented a conflict of interest. Dunagan argues that the business matters in which he represented the Leuchts were completely unrelated to the dissolution of marriage and that ownership of the business was not a central issue in the divorce; therefore, he reasons, there was no conflict of interest. This argument is without merit.
*1240 Rule 4-1.9(a) of the Rules Regulating The Florida Bar prohibits a lawyer who has formerly represented a client from representing another person "in the same or a substantially related matter" where that person's interests are materially adverse to the former client's interests.[3] Whether two legal matters are substantially related depends upon the specific facts of each particular situation or transaction. Further, the comment to rule 4-1.9 states that "[w]hen a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited."
For example, in Florida Bar v. Wilson, 714 So.2d 381 (Fla.1998), attorney Wilson represented Betty Wells and her husband in several matters, including a declaratory judgment suit against the Department of the Lottery. The final judgment in this suit provided that husband and wife were to share the lottery proceeds equally. Id. at 382. Subsequently, Mr. Wells sought to have Wilson represent him in a dissolution action against Mrs. Wells. Wilson refused due to his past representation, but after Mr. Wells obtained other counsel and filed a dissolution action, Wilson filed an answer and counter-petition on behalf of Mrs. Wells and moved to set aside the declaratory judgment award giving Mr. Wells fifty percent interest in the lottery winnings. Id. The referee found a clear conflict of interest in violation of rule 4-1.9, and we upheld this finding. Id. at 383.
Similarly, here Dunagan represented William and Paula Leucht in the formation of their business and, specifically, prepared a bill of sale transferring assets of the business to their joint ownership. Because the business was begun during the marriage, it was a marital asset and as such was inherently an issue in the divorce. Additionally, the petition for dissolution of marriage filed by Dunagan on William Leucht's behalf specifically raised the issue of the ownership of the business and impliedly disputed the validity of the bill of sale prepared by Dunagan in that it alleged that William Leucht "is the sole owner of the restaurant known as `Biscuits `N' Gravy and More'." While ownership of the business may not have been a hotly contested issue, it was still an issue involved in the divorce; therefore, at least one prior matter in which Dunagan jointly represented the Leuchts was substantially related to the divorce. Therefore, we find that Dunagan's representation of William Leucht in the divorce proceeding against Paula Leucht constituted a conflict of interest and approve the referee's finding in this regard.

II. Consent
Dunagan next argues that the referee erred in finding that Paula Leucht did not consent to Dunagan's representation of William Leucht in the dissolution of marriage action. Under certain circumstances, a lawyer may be permitted to represent a client despite a conflict of interest, but only if he or she obtains the consent of the appropriate party or parties after consultation. See R. Regulating Fla. Bar 4-1.7(a)-(b); 4-1.9(a). Here, the referee found that "no disclosure of the conflict or waiver of same took place, given the uncontested fact that no testimony was provided that the respondent ever consulted with Paula Leucht as to the circumstances which led him to represent William Leucht in the divorce, and to what her position was vis-a-vis his representing William *1241 Leucht." This finding is supported by the evidence.
Without consulting with or obtaining Paula Leucht's consent, Dunagan filed a petition for dissolution of marriage against her and on behalf of William Leucht. Shortly thereafter, Paula Leucht arrived home from a trip and discovered that the dissolution petition had been filed. Only then, after first calling Mr. Dunagan's office, did Paula Leucht seek and retain another attorney to represent her in the divorce. Only after she had retained an attorney of her own did Dunagan claim he sought her consent through her attorney.
Dunagan testified that he contacted Ms. Leucht's original and subsequent attorneys who gave their consent as attorneys for her. Ms. Leucht's original attorney, Mr. Beck, submitted an affidavit stating that "pursuant to a conference with my client, Paula K. Leucht, it was agreed that there would be no objection raised to the Respondent, Walter B. Dunagan, Esq., representing William Leucht." Paula Leucht acknowledged that she discussed Dunagan's representation of William Leucht with Beck and he advised her that there were better attorneys to be up against; so, she testified, "we never did say anything about him representing me." However, Ms. Leucht also testified that Beck never clearly advised her of her rights or the possible prejudice Dunagan's representation of her ex-husband presented. Accordingly, Ms. Leucht's and her attorney's failure to affirmatively object cannot be construed as "consent after consultation" as required by the rules.
Dunagan makes much of the fact that he could not personally consult with and obtain Ms. Leucht's consent because she was represented by counsel. However, there was no reason that Dunagan could not have consulted with and attempted to obtain Paula Leucht's consent prior to filing the dissolution petition on behalf of William Leucht and, therefore, prior to the time Paula Leucht retained other counsel to represent her in the divorce. This, in fact, would have been the most appropriate course of action. Although the rules do not specifically state that consultation with and consent from the client or former client must be obtained before the attorney may undertake the conflicting representation, clearly they contemplate as much. The rules state that an attorney shall not represent conflicting interests unless the client consents. Especially where the conflict exists prior to the beginning of the representation, this can only mean that the necessary consent should be obtained before the attorney agrees to represent the conflicting interest. This was clearly not done in this case.
Additionally, contrary to what Dunagan argues, it is not the responsibility of the client or the client's new attorney to raise the issue of conflict. The rules require the actual consent of the client after consultation, and as the comment to rule 4-1.7 states, it is "primarily the responsibility of the lawyer undertaking the [conflicting] representation" to obtain the necessary consent. Cf. Snyderburn v. Bantock, 625 So.2d 7, 13 (Fla. 5th DCA 1993) (concluding that conflict of interest could not be waived by failure to seek disqualification because ethical rule is designed for benefit of client and client informed attorney of conflict.) Accordingly, we approve the referee's finding that Paula Leucht did not consent to Dunagan's representation of William Leucht in the divorce proceeding against her.

III. Violation of Rule 4-1.9(b)
Dunagan also argues that the referee erred in concluding that his letters to the Port Orange police and city attorney violated rule 4-1.9(b). As discussed above, those letters stated that Dunagan represented William Leucht, that William Leucht was the sole owner of B & G, and that although there was a bill of sale which was "considered to put the business in the name of William and Paula Leucht," this "instrument and the legal consequences *1242 thereof were duly considered, and it was determined with deliberation that William Leucht would remain the sole owner." "[I]n order to prevent a breach of the peace from occurring," the letters further purported to notify the police that William Leucht intended to fire two employees who would then no longer be welcome on the restaurant premises.
Rule 4-1.9(b) prohibits a lawyer from using information relating to the representation of a former client to the former client's disadvantage except as permitted by rule 4-1.6 or when the information has become generally known. Dunagan essentially argues that the information in the letter was not used to Paula Leucht's disadvantage because it only addressed who had the right to sole possession of the premises, and Paula Leucht was arrested for disorderly conduct, not trespassing. Therefore, he argues, the letters did not cause her to be arrested.
However, the evidence supports the referee's finding that the letters contributed, at least to some degree, to Ms. Leucht's being arrested and forcibly removed from the premises of the business. Ms. Leucht testified that on the morning of her arrest, she called the restaurant and was told by an employee that Mr. Leucht had shown papers from Dunagan saying that Mr. Leucht was the sole owner of the restaurant and she was not welcome there. Ms. Leucht then went to the restaurant, where she was told by the police that she had to leave because William Leucht owned the restaurant, and was ultimately arrested. Although she was charged with disorderly conduct, the arrest report filled out by the police officer clearly shows that the police officers relied on the letter from Dunagan. The report states that she "affect[ed] the peace and operation of the Biscuits `N' Gravy restaurant by showing up at the restaurant against the wishes of William Leucht her husband who is the sole owner of the restaurant." It also states that William Leucht produced the letter from Dunagan and that the city attorney was contacted and gave "the legal opinion that W. Leucht could in fact refuse to allow his wife on the property."
Dunagan also argues that the letters and the information contained therein were permitted under rule 4-1.6(b)(1), which requires a lawyer to reveal information to the extent necessary to prevent a client from committing a crime. He argues that the letter itself states that the recipients were being notified in order to prevent a breach of the peace. However, this rule is clearly inapplicable because it permits revelation of information to the extent necessary to prevent a client from committing a crime. The letter makes no reference whatsoever to the possibility of Paula Leucht committing a crime; rather, it specifically names Karen Walston and Erven Alexander, the two employees William Leucht intended to fire. Therefore, the purpose of the letter was clearly not to prevent Paula Leucht from committing a crime. The referee also found that the letters were not permissible under rule 4-1.6(b)(2), which permits an attorney to reveal information in order to prevent a death or substantial bodily harm to another. Dunagan does not dispute this. Accordingly, because Dunagan clearly used information relating to his representation of Paula Leucht to her disadvantage and such disclosures were not permitted under rule 4-1.6, we approve the referee's conclusion that the letters at issue violated rule 4-1.9(b).

IV. Discipline
Finally, Dunagan argues that the recommended discipline, a ninety-one-day suspension, is too harsh. While this Court bears the ultimate responsibility of ordering the appropriate sanction for attorney misconduct, the referee's recommendation is presumed correct and will be followed if reasonably supported by existing case law and not "clearly off the mark." Florida Bar v. Vining, 707 So.2d 670, 673 (Fla. 1998). We find that the recommended suspension is appropriate. First, the Standards for Imposing Lawyer Sanctions support a suspension. Standard 4.22 provides *1243 that "[s]uspension is appropriate when a lawyer knowingly reveals information relating to the representation of a client not otherwise lawfully permitted to be disclosed and this disclosure causes injury or potential injury to a client." Further, Standard 4.32 provides that "[s]uspension is appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict and causes injury or potential injury to a client."
Second, the Court has imposed similar suspensions for similar conduct. In Florida Bar v. Sofo, 673 So.2d 1, 2 (Fla.1996), the attorney represented two corporations, in which he owned stock, with adverse interests in the same matter and used information obtained in representing one corporation to the corporation's detriment and without its consent. The Court imposed a ninety-one-day suspension. Id. Additionally, in Florida Bar v. Wilson, 714 So.2d 381 (Fla.1998), discussed above, where there was misconduct very similar to that committed here as well as one other instance of misconduct, the referee recommended a ninety-day suspension; however, taking into consideration Wilson's very recent suspension in another case and the resulting cumulative nature of his misconduct, the Court imposed a one-year suspension. Id. at 383-84.
Here, Dunagan has been disciplined on two previous occasions for misconduct involving a conflict of interest-the more recent instance resulting in a sixty-day suspension. See Florida Bar v. Dunagan, 565 So.2d 1327 (Fla.1990)(imposing sixty-day suspension for charging clients usurious rate of interest on outstanding fee balance and representing clients where his personal interests conflicted with those of the clients); Florida Bar v. Dunagan, 509 So.2d 291 (Fla.1987)(publicly reprimanding Dunagan for entering into business transaction with a client wherein they had conflicting interests without advising the client to obtain independent legal counsel).[4] While this misconduct is not close enough in time to constitute cumulative misconduct as was the case in Wilson, it certainly justifies a ninety-one-day suspension in this case. Accordingly, we approve the recommended discipline.
Walter Benton Dunagan is hereby suspended from the practice of law for ninety-one days. The suspension will be effective thirty days from the filing of this opinion so that Dunagan can close out his practice and protect the interests of existing clients. If Dunagan notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Dunagan shall accept no new business from the date this opinion is filed until the suspension is completed. Judgment for costs in the amount of $2,327.89 is entered in favor of The Florida Bar against Walter Benton Dunagan, for which sum let execution issue.
It is so ordered.
HARDING, C.J., SHAW, WELLS, ANSTEAD, and PARIENTE, JJ., and OVERTON and KOGAN, Senior Justices, concur.
NOTES
[1] The commercial lease at issue was signed by William Leucht and his former wife Maria.
[2] The charged violation of rule 4-1.9(a) was added by an amended complaint filed June 24, 1998.
[3] Given that the referee found Dunagan in violation of rule 4-1.7 as well as 4-1.9, he apparently found a conflict of interest under both rules. Rule 4-1.7, however, does not require that matters be substantially related; rather, it prohibits a lawyer from representing a client where that client's interests are adverse to another client the lawyer represents in another matter, "even if the other matter is wholly unrelated." See R. Regulating Fla. Bar 4-1.7 cmt. Because William Leucht's interests in the dissolution of marriage action were clearly adverse to Paula Leucht's interests in that matter, we approve the referee's finding as to rule 4-1.7.
[4] Dunagan also received a private reprimand in Florida Bar File No. 86-16,853(07A) for technical trust accounting violations.