# NO. 12-12-00433-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE: IN THE* | § | |
| *INTEREST OF* | § | *ORIGINAL PROCEEDING* |
| *C.G.H., A MINOR* | § | |

## *MEMORANDUM OPINION*

Relators Lauren Ashley Stainback and Leslie Gayle Stainback filed a petition for writ of mandamus challenging the trial court's order granting the motion to disqualify counsel filed by trial counsel for real parties in interest, James, Jennifer, and Zachary Hugo. The respondent is the Honorable Carole Clark, Judge of the 321st Judicial District Court, Smith County, Texas. We deny the petition.

## BACKGROUND

Zachary Hugo and Lauren Stainback are the parents of C.G.H., who is fourteen months old. Zachary's parents, James and Jennifer Hugo, brought a suit affecting the parent-child relationship by which they sought sole managing conservatorship of C.G.H. Leslie Stainback, Lauren's mother, counterclaimed for conservatorship in her individual capacity and as next friend for Lauren.

At all times pertinent to this opinion, the Stainbacks were represented by their trial counsel, Beau Sinclair. Zachary has a girlfriend named Summer Brown, to whom he recently became engaged. Brown's grandmother, Mary Moore, was previously represented by Sinclair when she sought custody of Brown, approximately two years earlier. In August 2012, the Stainbacks subpoenaed Brown as a witness. In September 2012, the Hugos designated Brown and Moore as witnesses.

On September 17, 2012, the Hugos' trial counsel filed an amended motion to disqualify Sinclair from representing the Stainbacks. They argued that when Sinclair represented Moore, she revealed confidential and privileged information about Brown to him, and that his continued representation of the Stainbacks would be in violation of Texas Disciplinary Rule of Professional Conduct 1.09(a).[1]

On September 26, 2012, the trial court conducted a hearing on the Hugos' motion. Following the hearing, the trial court granted the Hugos' motion, noting that Sinclair's representation of the Hugos is adverse to Moore and either (1) in reasonable probability, will involve a violation of Rule 1.05, or (2) is substantially related to the pending litigation. Thereafter, the Stainbacks filed this petition for writ of mandamus.

## AVAILABILITY OF MANDAMUS

Mandamus will issue to correct a clear abuse of discretion where there is no adequate remedy by appeal. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992). The trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *Id.* The granting or denial of a motion to disqualify is reviewable by mandamus. *In re Bahn*, 13 S.W.3d 865, 872 (Tex. App.–Fort Worth 2000, orig. proceeding). Moreover, disqualification of counsel renders remedy by appeal inadequate. *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002). Accordingly, our analysis will focus on whether the trial court abused its discretion.

## DISQUALIFICATION OF COUNSEL

In their petition, the Stainbacks argue that the trial court abused its discretion in granting the motion to disqualify because (1) the Hugos, who were never represented by Sinclair, lack standing to seek to disqualify him and (2) the evidence presented does not support Sinclair's disqualification.

---

[1] We note that the Hugos cited to Rule 1.09(a)(1) and (a)(4). The current version of the statute does not contain a subsection "(a)(4)." However, based on the language of the statute upon which the Hugos relied, it is apparent that they sought disqualification under Rule 1.09(a)(2) and (3). *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.09(a)(2), (3), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West 2013) (Tex. State Bar R. art. X, § 9).

2

**Standing to Move for Disqualification**

We first consider whether a nonclient litigant can move to disqualify opposing counsel under Rule 1.09(a). Rule 1.09 applies when a lawyer's representation of a person creates a conflict of interest with a former client. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.09, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West 2013) (Tex. State Bar R. art. X, § 9). The Stainbacks cite no authority addressing standing under Rule 1.09, nor have we been able to locate any such authority. Instead, the Stainbacks cite *In re Robinson*, 90 S.W.3d 921 (Tex. App.–San Antonio 2002, orig. proceeding), *Jones v. Lurie*, 32 S.W.3d 737 (Tex. App.–Houston [14th Dist.] 2000, no pet.), *Glassell v. Ellis*, 956 S.W.2d 676 (Tex. App.– Texarkana 1997, pet. dism'd w.o.j.), and other cases to support their argument.

In *Robinson*, the court considered a similar issue pertaining to a motion to disqualify pursuant to Texas Disciplinary Rule of Professional Conduct 1.06 (the general conflict of interest rule). *See Robinson*, 90 S.W.3d at 924. In its analysis, the court considered the cases on which the Stainbacks rely. *Id*. The court noted that some of the cases were decided before the Rules of Professional Conduct were enacted and made effective in 1990. *Id*. The court also specifically addressed the then-recent decisions in *Jones* and *Glassell*, but noted that neither court in those cases mentioned the Rules of Professional Conduct, the preamble to the Rules, or the comments thereto. *See id*. The court further stated that "[i]n spite of the fact that the disciplinary rules are merely guidelines–not controlling standards–for disqualification that could not be reconciled with the Texas Rules of Professional Conduct[,] it would be injudicious for this court to employ a rule of disqualification that could not be reconciled with the Texas Rules of Professional Conduct." *Id*. at 924-25. As a result, the court discussed the issue in light of the Disciplinary Rules of Professional Conduct as follows:

> Comment 17 to Rule 1.06 provides that if a conflict as outlined in the rule arises, it is "primarily the responsibility of the lawyer undertaking the representation" to point out the conflict. DISCIPLINARY R. PROF'L CONDUCT 1.06, cmt. 17. A court, however, may raise the question when there is reason to infer that the lawyer has neglected the responsibility. *Id*. "Where *the conflict* is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question. Such an objection should be viewed with great caution, however, for it can be misused as a technique of harassment." *Id*. (emphasis added). Comment 17 is clear. Opposing counsel has standing to seek disqualification, if a conflict which violates the rules exists and is sufficiently severe to "call in question the fair or efficient administration of justice." *Id*.; *Zarco Supply Co. v. Bonnell*, 658 So.2d 151, 154 (Fla. Dist. Ct. App. 1995) (conferring on Zarco standing to seek disqualification of opposing counsel because conflict "clearly calls into question 'the fair or efficient administration of justice'"); *see Kenn Air Corp. v. Gainesville–Alachua County Regional Airport Auth.*, 593 So.2d 1219, 1222 (Fla. Dist. Ct. App. 1992) (allowing

3

someone other than former client to move for disqualification in instances involving conflicts of interest in simultaneous representations); ***Appeal of Infotechnology, Inc.***, 582 A.2d 215, 221 (Del. 1990) (concluding that nonclient litigant may move to disqualify opposing counsel, but must prove by clear and convincing evidence that conflict exists and that it will prejudice fairness of proceedings).

*Id*. at 925 (emphasis in original). This discussion and the holdings on the subject from other jurisdictions set forth in **Robinson** are informative and analogous to the Rule 1.09 motion filed in the instant case.

Most often, a motion filed in a trial court, though filed by an attorney, is attributed to the party represented by that attorney. *See, e.g.*, TEX. R. CIV. P. 7, 13. Indeed, in the case at hand, the Hugos' motion was brought in their name, but signed by their trial counsel. The record also reflects that, before filing the motion, the Hugos' trial counsel personally brought the matter to Sinclair's attention. When he declined to withdraw, the Hugos' trial counsel sought to have him disqualified by filing the motion at issue. And though counsel filed the motion in the Hugos' name, she signed the motion. *See id*. We conclude that the motion reasonably can be attributed to the Hugos' trial counsel as permitted by the Rules of Professional Conduct. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.06, cmt. 17. Moreover, as set forth in greater detail below, because the risk that Sinclair would use the information in examining Brown and Moore in his zealous representation of the Stainbacks is high, we conclude that the conflict here calls into question the fair administration of justice. Therefore, we hold that the fact that the Hugos were never represented by Sinclair has no bearing on whether their trial counsel could seek to disqualify Sinclair pursuant to Rule 1.09. *Id*. Accordingly, the Hugos' trial counsel had standing to seek Sinclair's disqualification.

## Grounds Supporting Disqualification

We next consider whether the trial court abused its discretion in granting the motion to disqualify Sinclair. The Hugos' motion and the trial court's order, pronounced on the record at the hearing, focused on the guidelines in Rule 1.09(a)(2) and (3). We first consider whether the trial court abused its discretion in granting the Hugos' motion pursuant to Rule 1.09(a)(2).

### *Governing Law*

Disqualification is a severe remedy that can result in immediate harm by depriving a party of the right to have counsel of its choice. ***Cimarron Agr., Ltd. v. Guitar Holding Co., L.P.***, 209 S.W.3d 197, 201 (Tex. App.–El Paso 2006, no pet.); *see **Spears v. Fourth Court of***

4

*Appeals*, 797 S.W.2d 654, 656 (Tex. 1990).  Accordingly, in ruling on a motion to disqualify, the trial court must strictly adhere to an exacting standard to discourage use of disqualification as a dilatory trial tactic.  *Cimarron*, 209 S.W.3d at 201.  The movant bears the burden of proving that the attorney should be disqualified.  *Id*.

Mere allegations of unethical conduct or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice under the "exacting standard" required to grant a motion to disqualify.  *Id*.  Rather, the movant must provide the trial court with sufficient information so that it can engage in a painstaking analysis of the facts.  *Id*.  A movant is not required to reveal any confidences, but must delineate with specificity the subject matter, issues, and causes of action presented in the former representation.  *Id*.

The Texas Disciplinary Rules of Professional Conduct do not determine whether former counsel should be disqualified in any subsequent litigation, but they do provide guidelines and suggest the relevant considerations.  *Id*.  Technical compliance with ethical rules might not foreclose disqualification, and conversely a violation of ethical rules might not require disqualification. *In re Users Sys. Svcs., Inc.*, 22 S.W.3d 331, 334 (Tex. 1999).

Without receiving prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter that is adverse to the former client if the representation in reasonable probability will involve a violation of Rule 1.05.[2] *See* Tex. Disciplinary Rules Prof'l Conduct R. 1.09(a)(2). Rule 1.05 pertains to confidentiality of information and restricts its use and dissemination.  Tex. Disciplinary Rules Prof'l Conduct R. 1.05, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (West 2013) (Tex. State Bar R. art. X, § 9).

<u>Adversity</u>

"Adversity" is a product of the likelihood of the risk and the serious of its consequences. *See Nat'l Med. Enters., Inc. v. Godbey*, 924 S.W.2d 123, 132 (Tex. 1996).  Even if the risk that a former client will be affected by counsel's participation in subsequent litigation is small, if the consequences to the former client are great, then disqualification is appropriate.  *See Godbey*, 924 S.W.2d at 133.  As stated by the court, "[t]he chances of being struck by lightning are slight, but not slight enough, given the consequences, to risk standing under a tree in a thunderstorm." *Id.*

---

[2] The record reflects that Sinclair asked Moore to sign a waiver, and she declined to do so.

Moore testified that when Sinclair represented her, she related to him confidential information consisting of Brown's medical information, both physical and psychological. *See Phoenix Founders, Inc. v. Marshall*, 887 S.W.2d 831, 833 (Tex. 1994) (conclusive presumption that confidences and secrets were imparted to attorney during prior representation); *see also* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.05(a) (defining "confidential information"). She further testified that she understood the attorney-client privilege to be the "confidentiality of all things" and that she relied on that understanding when she gave Sinclair the information pertaining to Brown. Moore further stated that she declined to waive her attorney-client privilege when Sinclair asked her to do so and that she knew that Sinclair had issued a subpoena for Brown's testimony when he asked for her waiver. Because Moore and Brown are fact witnesses and Brown is the fiancée of a party seeking custody of C.G.H., we conclude that the risk that Sinclair would use the information in examining Brown and Moore in his zealous representation of the Stainbacks is high. Moreover, Moore testified that she felt as if Brown were "being tried" and she believed that Brown could be hurt if she were prevented from seeing C.G.H. It is apparent from Moore's testimony that she would suffer great distress if Sinclair were to use the information he obtained from her during his previous representation in his examination of Brown as a witness.

Here, the oft-used "unlikelihood of being struck by lightning" analogy does not apply because of the high likelihood that the confidential information Sinclair received will be used in support of his duty to zealously advocate on behalf of the Stainbacks. Nonetheless, it is reasonable to conclude that when Moore revealed confidential information to Sinclair regarding Brown's medical history, she was entitled to expect that he would not later use that information against her granddaughter as a witness in subsequent litigation. Thus, her distress is a valid concern. *Cf. Godbey*, 924 S.W.2d at 133 (former client's anxiety that former law firm was advancing same allegations that have been made toward him in part was understandable). Thus, we conclude that the product of the risk and the consequences is great enough that Sinclair's representing the Stainbacks in this matter is adverse to Moore.

*Reasonable Probability That Representation Will Involve a Violation of Rule 1.05*

Finally, we consider whether there is a reasonable probability that Sinclair's representation of the Stainbacks will involve a violation of Rule 1.05. As Zachary's fiancée, Brown's medical history, both physical and psychological, is relevant to the issue of C.G.H.'s

6

best interest. *See* TEX. FAM. CODE ANN. § 153.002 (West 2008); TEX. R. EVID. 401. As an advocate for the Stainbacks, Sinclair is required to zealously assert their position under the rules of the adversary system. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT preamble ¶ 2, *reprinted in* TEX. GOV'T CODE ANN. tit.2, subtit. G, app. A (West 2013). In performing his role as an advocate for the Stainbacks, Sinclair necessarily would have to examine Moore and Brown concerning Brown's medical and psychological history. Because doing so almost certainly would result in his revealing confidential information in violation of Rule 1.05,[3] we conclude that the trial court reasonably could have found that he should be disqualified under Rule 1.09(a)(2). *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.09, cmt. 4 (whether there exists a reasonable probability that representation would involve unauthorized disclosure of confidential information under Rule 1.05 is question of fact). Therefore, we hold that the trial court did not abuse its discretion in granting the motion disqualifying Sinclair from representing the Stainbacks in this matter.[4]

## DISPOSITION

We have held that the trial court did not abuse its discretion in granting the motion disqualifying Sinclair from representing the Stainbacks in this matter. Accordingly, the Stainbacks' petition for writ of mandamus is ***denied***. *See* TEX. R. APP. P. 52.8(a). All pending motions are overruled as moot.

**BRIAN HOYLE**
Justice

Opinion delivered July 3, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

---

[3] *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.05(b).

[4] Because we have determined that the trial court reasonably could have found that Sinclair should be disqualified under Rule 1.09(a)(2), we need not consider whether the trial court abused its discretion in granting the Hugos' motion pursuant to Rule 1.09(a)(3). *See* TEX. R. APP. P. 47.1.

7



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### JULY 3, 2013

### NO. 12-12-00433-CV

### LAUREN ASHLEY STAINBACK AND LESLIE GAYLE STAINBACK,
Relators
v.
### HON.CAROLE W. CLARK,
Respondent

---

## ORIGINAL PROCEEDING

---

ON THIS DAY came to be heard the petition for writ of mandamus filed by **LAUREN ASHLEY STAINBACK AND LESLIE GAYLE STAINBACK**, who are the relators in Cause No. 12-0721-D, pending on the docket of the 321st Judicial District Court of Smith County, Texas. Said petition for writ of mandamus having been filed herein on December 28, 2012, and the same having been duly considered, because it is the opinion of this Court that a writ of mandamus should not issue, it is therefore CONSIDERED, ADJUDGED and ORDERED that the said petition for writ of mandamus be, and the same is, hereby **DENIED**.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

8