MAKAR, J.
Changing horses in midstream, cautioned President Lincoln, is a bad idea.[1] Switching clients in midstream is equally ill-advised, resulting in attorney disqualification. The only question we address is whether the order at issue erred by limiting the scope of disqualification to only “further issues at the trial level regarding the trial in this case” versus the entire case.
I.
An auto accident in Jacksonville, Florida, between Michelle Botchey and Daniel Rombola, spawned this litigation. Rombo-la was driving a vehicle owned by his mother, Maria Hernandez (for convenience, we refer to them collectively as Rombola). In the personal injury lawsuit that resulted, Botchey as plaintiff was represented by Eric Block of the Law Offices of Eric S. Block, P.A. Rombola was represented by Chelsea Winieki and Fraz Ahmed of the law firm Kubicki Draper, P.A. Both Winieki and Ahmed actively participated on behalf of Rombola throughout the defense of the case and at trial. The jury ultimately returned a verdict of about $1.2 million in Botchey’s favor.
On November 19, 2012, Rombola filed a post-trial motion seeking a new trial and remittitur. Attorneys Winieki and Ahmed were listed on the signature block; Win-icki signed the motion. Two months later, things markedly changed. On January 25, 2013, Ahmed resigned from Kubicki Draper and, within the week, began working for the Block firm, the same firm representing Botchey. Though not entirely clear from the’record, it appears that Ahmed was the only attorney (other than Block) working for the Block firm at that time.
Despite the obvious conflict of interest that Ahmed’s new employment had caused, the’Block firm undertook no steps to ameliorate the problem, such as getting a waiver from Rombola or instituting safeguards to prevent the use or sharing of confidential information gleaned from Ahmed’s representation of Rombola in the same case. As a result, on March 7, 2013, Rom-bola filed a motion to disqualify the Block firm from any further representation of Botchey in the matter. The motion was accompanied by an affidavit of Winieki that detailed the substantial degree of Ahmed’s involvement on Rombola’s behalf and his access to confidential information before Ahmed switched firms.
The Block firm did not respond to the disqualification motion. Instead, on March 21, 2013, it filed a response in opposition to Rombola’s pending motion for new trial/re-mittitur on behalf of Botchey. The response, which contained twelve pages of content, listed Ahmed as an attorney of record for Botchey on its signature block; Block, also listed, signed the motion. The filing created the anomaly of Ahmed now being counsel of record for both sides in the litigation, his name appearing on both the defense’s post-trial motions and the plaintiffs post-trial response.
On that same day, the trial court issued a show cause order, requiring a response from the Block firm on the disqualification issue. In response, the Block firm sent a *1140 letter to the trial court stating it did not want to contest the motion; contrarily, it asserted in its formal response filed with the court that even if Ahmed had privileged information regarding the trial, it was “irrelevant and immaterial,” as the trial was over and the pending motions were to be decided based upon the trial record. Both law firms submitted proposed orders: Rombola’s proposed order would disqualify the Block firm from any further representation of Botchey in the entire matter; the Block firm submitted a proposed order that, in pertinent part, stated:
Eric S. Block and the Law Offices of Eric S. Block, P.A., as well as its employees, are hereby disqualified from any further representation of this Plaintiff, regarding any further issues at the trial level regarding the trial of this case.
On April 9, 2013, the trial court entered the order submitted by the Block firm. This petition for writ of certiorari followed.
II.
The issue we address is whether the trial court erred in limiting disqualification of Ahmed and the Block firm to only “any further issues at the trial level regarding the trial of this case” rather than to the case as a whole. Because review of the disqualification order is by certiorari, Rombola “must not only show the trial judge ‘departed from the essential requirements of law' but also that the harm resulting from the erroneous order is material and cannot be remedied on appeal from the final judgment or order.” Zarco Supply Co. v. Bonnell, 658 So.2d 151, 153 (Fla. 1st DCA 1995) (citation omitted); Kenn Air Corp. v. Gainesville-Alachua Cnty. Reg’l Airport Auth., 593 So.2d 1219, 1223 (Fla. 1st DCA 1992). Both requirements are met.
A.
We begin by noting that review of disqualification orders by certiorari is an accepted means of protecting clients against ongoing violations of ethical rules, particularly those involving the potential disclosure or use of confidences or information related to prior representations. See Kenn Air Corp., 593 So.2d at 1223 (granting relief via certiorari due to a potential for use/misuse of client information and an appearance of impropriety by switching sides); see also State Farm Mut. Auto. Ins. Co. v. K.A.W., 575 So.2d 630, 633-34 (Fla.1991) (reversing the district court’s denial of certiorari relief because the conflict created the potential that attorney could disclose client confidences). Absent review via certiorari, the protection of clients from potential breaches of ethical rules in ongoing litigation would be unavailable.
Turning to the case at hand, the disqualification order is fundamentally erroneous because of the way it limits the ongoing ethical obligations of Rombola’s former lawyer, Ahmed, and his new firm. The lawsuit Botchey filed against Rombola is a single, indivisible case to which the ethical obligations of rules 4-1.9 and 4-1.10 continually attach.[2] See, e.g., The Florida *1141 Bar v. Dunagan, 731 So.2d 1237, 1240 (Fla.1999) (rejecting argument that no conflict of interest exists where an attorney represented a couple in their business matters, including the ownership issues, and then later represented only the husband in a dissolution of marriage action in which ownership of the business was an issue).[3] Ethical responsibilities of fidelity and protection of client confidences do not change or become divisible as a case moves from pre-lawsuit discussions, to a lawsuit’s filing, through pre-trial activities and trial, and on to post-judgment and appeals; they remain inviolate absent client consent or such other lawful basis for waiver.[4] The reason is that the solemn duties of fidelity and protecting confidences begin when the attorney-client relationship is first formed and they continue to the end of the case ... and sometimes even beyond. As this Court said long ago:
Rule 4-1.9 also prohibits the attorney from using information relating to the representation of a former client to the disadvantage of the former client. This rule is aimed at the problem of attorneys ‘switching sides,’ and arises because the duty of confidentiality under rule 4-1.6 protects all confidences and information obtained during representation of a client, and because this duty continues even after the attorney-client relationship is terminated.
Kenn Air Corp. v. Gainesville-Alachua Ctny. Reg’l Airport Auth, 593 So.2d 1219, 1222 (Fla. 1st DCA 1992) (emphasis added); see also Elkind v. Bennett, 958 So.2d 1088, 1090-91 (Fla. 4th DCA 2007) (attorney “had a continuing duty to his client not to disclose confidences. See R. Regulating Fla. Bar 4-1.6 & 4-1.9(b). This duty continued even past the termination of the matter for which representation was sought.”) (emphasis added). Ongoing ethical duties obligate ongoing judicial protection of the former client’s interests; if counsel is disqualified in an ongoing case, it must be for the entire case, or else the client’s interests are not protected.
Botchey justifies the limited scope of the disqualification order by arguing that *1142 Rombola may pursue another disqualification motion if Ahmed or the Block firm file an appearance if an appeal is taken. Carving out the “trial” portion of the litigation for protection, however, leaves the ongoing post-trial period unprotected. Yet the post-trial period is precisely when much appellate-related work is done and prospective litigation strategy discussed.[5] The disqualification order entirely fails to protect Rombola’s interests during this time and thereafter.
Moreover, limiting the scope of disqualification to only certain narrowly-defined “trial” issues overlooks that every stage of an ongoing lawsuit is tautologically a “substantially related” component of the overall proceeding to which ethical obligations continually adhere. Whittling down and splitting ethical obligations, as was done here, creates a sieve through which confidential information and protected litigation strategy may seep via an order’s temporal and interpretive cracks.
The language of the disqualification order — prepared by Botchey and approved unchanged by the trial court — demonstrates this point by leaving much room for interpretive mischief about its scope. Consider the following highlighted portions of the order, which disallows “any further representation of this Plaintiff, regarding any further issues at the trial level regarding the trial of this case.” These highlighted limitations, individually and collectively, create interpretive gaps that can be exploited, but which could not if full disqualification were ordered. By limiting its prohibition to “further representation ” of Botchey the order does not facially preclude informal consultative-type relationships that fall short of the formal type of representation of Botchey that the Block firm and Ahmed already provided. Similarly, by only prohibiting “further representation” as to “any further issues at the trial level” the order can be read to allow representation on existing issues, such as the ones in the post-trial filings. Likewise, limiting “any further issues at the trial level” to only those “regarding the trial of this case” does not limit consultation about appellate strategy and representation, which has expanded to include many aspects of trial proceedings including the post-trial phase; a creative, non-frivolous interpretation of the order potentially would allow “appellate-type” representation or consultation prior to (or beyond) the filing of a notice of appeal. An attorney subject to the order could plausibly say “I am providing appellate consultation regarding a possible appeal of the case on existing issues; I am not providing trial representation on any further issues at the trial level that may arise regarding the trial of the case.” That is the danger, and material harm, of an order that narrows and subdivides an indivisible ethical obligation.
Simply said, the ethical duties at issue in this case are indivisible within an ongoing litigation matter where a client has not consented or objects. At this most fundamental level of analysis, the order — by purporting to limit disqualification to less than the entire case — departed from the essential requirements of law, resulting in a gross injustice to Rombola, whose ongoing interests against misuse of confidential information and litigation strategy were left defenseless. Rombola was entitled to broad protection from his former attorney, *1143 who — to paraphrase another court — had literally gone from Rombola’s “champion” to his “nemesis.” Hoggard v. Snodgrass, 770 S.W.2d 577, 583-84 (Tex.App.1989) (former attorney’s “conflict of interest is obvious; within the same action, [former attorney] has literally gone from [his client’s] champion to her nemesis. The appearance of impropriety is manifest.”). Given that the “public’s perception of the integrity of the bar” plays an important role in disqualification matters, including the “appearance of impropriety that arises in situations in which an attorney switches sides,” we conclude that the trial court departed from the essential requirements of law by failing to accord Rombola full relief under the circumstances. Kenn Air Corp., 593 So.2d at 1223.
B.
Botchey claims Rombola can show no material injury or prejudice because the trial is over and, so it seems, Ahmed and the Block firm will have no further involvement in the matter including on appeal, if one is taken. He points out that the record is complete, and although Ahmed switched sides and filed a competing (and unauthorized) legal memo against his former client, Ahmed and the Block firm are now disqualified making harm to Rombo-la’s interests speculative.
But this is a real case, with real clients, not a moot court competition. As Rombo-la points out, the harm that was caused in this case — and that continues without a full disqualification order — is material because “the obligation of an attorney to preserve the confidences and secrets of a client lies at the very foundation of the attorney-client relationship” that is universally recognized in American jurisprudence. Sears, Roebuck & Co. v. Stansbury, 374 So.2d 1051, 1053 (Fla. 5th DCA 1979). As the Fifth District has noted, an “attorney is forbidden to use a confidence or secret of a client to the client’s disadvantage or to use a confidence or secret, absent informed consent by the client, for the attorney’s own benefit or the benefit of a third person.” Stansbury, 374 So.2d at 1053. Moreover, the Florida Supreme Court has held that “actual proof of prejudice” is not a “prerequisite to disqualification” where an attorney “may be disclosing confidences” in an ongoing case. K.AW., 575 So.2d at 634. Irreparable harm exists because there is no adequate remedy on appeal to undo the ongoing injury to a former client’s interest in safeguarding confidential information or preventing the disclosure or misuse of information obtained from the client to its disadvantage. See Zarco Supply Co., 658 So.2d at 154-55 (“For interlocutory review by certiorari, it is not necessary to demonstrate actual prejudice in order to justify disqualification of opposing counsel.”); Kenn Air Corp., 593 So.2d at 1223 (“We also conclude that any remedy available to Kenn Air from an appeal of a final adverse order would be inadequate due to the fact that Ireland’s informational advantage, obtained through his earlier representation of Charter, could cause material injuries to Kenn Air at any subsequent proceedings.”) (emphasis added). The disqualification order at issue does nothing to address these ongoing problems of potential disclosure of client confidences.
In the context of this case, the potential for misuse of client confidences and litigation strategy is no mere theoretical concern. The record reflects that Ahmed actually acquired confidential information from his representation of Rombola. The uneontested affidavit of Winicki says that Ahmed was involved in litigation strategy and trial preparations including speaking with Rombola and his mother “on several occasions” and preparing for and conducting depositions. He worked as co-counsel *1144 on a daily basis during trial and he “acquired confidential information regarding this case.” He delivered the opening statement at trial, arguing in defense of Rombola. Given this intimate degree of attorney involvement, switching sides and turning against a former client in the same ongoing case without client consent presents one of the most compelling cases for broad prophylactic judicial action.
As the Florida Supreme Court has held, the presumption that clients’ confidences are shared with their attorneys exists because of the “difficulty of proving that confidential information useful to the attorney’s current client was given to the attorney.” State Farm Mut. Auto. Ins. Co. v. K.A.W., 575 So.2d 630, 633-34 (Fla.1991). This same difficulty exists in this case. As Rombola points out, only if Ahmed or the Block firm take some public act, such as filing a formal notice of appearance in an appeal of the judgment, would he even know they continued to have involvement in the matter. His concern is heightened because his former lawyers regard any confidential information received as “irrelevant and immaterial” and their ethical obligations fully alleviated because the record on appeal is fixed for purposes of post-trial motions and an appeal. But oftentimes it is what is not in the record that is critical in making strategic decisions. Information shared in confidential after-hours trial preparation sessions — that unveil litigation strategies and test their strengths and weaknesses — is oftentimes far more potentially harmful if disclosed to adversaries (or used against ' a former client) than what is in the record. The disqualification order does nothing to quell these concerns, which cannot be effectively remedied, even if discovered, at the appellate end of a lawsuit.,
Rombola had good reason to insist upon a full disqualification order. His lawyer switched sides without his consent and ignored Rombola’s protests to disqualify himself (and his new firm) from the matter. Rombola filed a formal motion for disqualification, yet it was ignored. Instead of immediately ceasing any involvement in the case, Ahmed and the Block firm forged ahead by preparing and filing a legal memorandum in opposition to the pending motions of Rombola upon which Ahmed’s name appeared. This was done at a time after Ahmed had been privy to confidential information and Rombola’s litigation strategy, each acquired while on the defense’s payroll. Whether the confidential information proved useful in the legal memorandum filed in opposition to Rom-bola is an impertinent question; what matters is that the change in representation was nonconsensual and that confidential information was in immediate need of ongoing protection. As our supreme court has noted, the purposes for maintaining client confidences are (at least) twofold. The first is to develop the trust that is “essential to an attorney-client relationship” including “a free flow of information” between clients and their lawyers. The second purpose for protecting client confidences, which is “fundamental to a fair adversary system,” is that “[o]ur legal system' cannot function fairly or effectively if an attorney has an informational advantage in the form of confidences gained during a former representation of his client’s current opponent.” K.A.W., 575 So.2d at 632. Neither interest is served by judicial orders that fail to protect former clients from side-switching lawyers; indeed, the readiness of lawyers to cast aside loyalties and switch sides fuels lawyer jokes that cast a disparaging shadow on the justice system. See Marc Galanter, “Lowering the Bar:. Lawyer Jokes and Judicial Culture,” 238 (2005).
Finally, we simply cannot agree, as Bot-chey suggests, that Rombola’s remedy is *1145 to file a new motion to disqualify if either Ahmed or the Block firm makes an appearance in this case on plenary appeal; it would be an illusory remedy at best. And, as Rombola points out, it would likely be claimed that he sat on, and thereby waived, his rights by waiting for such an unlikely event to occur. In short, the disclosure or misuse of confidential information presents an ongoing and unacceptable risk of harm to Rombola that only a full disqualification order could prevent, and for which relief via certiorari is appropriate.
HI.
Obtaining confidential client information, switching sides in an ongoing lawsuit, and then filing a legal response against the former client over its objections, is worthy of the strongest protection of the abandoned client’s interests. It was incumbent on the trial court to disqualify the attorney and his new law firm from the entire lawsuit.
PETITION GRANTED.
SWANSON, J., concurs; ROWE, J., concurs in result only.

. See William Safire, Safire’s Political Dictionary (2008).
The figure of speech was Lincoln's, spoken at the Republican convention of 1864 to a delegation from the Union League Club, which had hailed the action of the convention in nominating Lincoln.... he did not allow himself to suppose that either the Convention or the League had concluded that he was either the greatest or the best man in America, but rather that they had decided it was best not to ‘swap horses while crossing the river.'
Id. at 193.

, Rule 4-1.9, Rules Regulating the Florida Bar, provides that a lawyer who has formerly represented a client in a matter shall not thereafter:
(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent;
(b) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the *1141 information has become generally known; or
(c) reveal information relating to the representation except as these rules would permit or require with respect to a client.
R. Regulating Fla. Bar 4-1.9 (2013). Rule 4-1.10, in pertinent part, provides:
(b) Former Clients of Newly Associated Lawyer. When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by rules 4-1.6 and 4-1.9(b) and (c) that is material to the matter.
(d) Waiver of Conflict. A disqualification prescribed by this rule may be waived by the affected client under the conditions stated in rule 4-1.7.

. The court stated that "[w]hether two legal matters are substantially related depends upon the specific facts of each particular situation or transaction. Further, the comment to rule 4-1.9 states that when a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited.” Dunagan, 731 So.2d at 1240 (internal quotations omitted).

. Rule 4-1.6, entitled "Confidentiality of Information,” provides that consent is required to reveal information relating to representation of a client, absent an exception. R. Regulating Fla. Bar 4-1.6(a) (2013) ("Consent Required to Reveal Information. A lawyer shall not reveal information relating to representation of a client except as stated in subdivisions (b), (c), and (d), unless the client gives informed consent.”). None of the exceptions applies in this case.

. The range of possible matters include: consultation on an appellate strategy and timetable; preparing appellate record, notice of appeal, and drafts of appellate briefs/motions; consult on appellate bond and other procedural issues. See generally Raymond T. Elli-gett, Jr., You Should Have Called Me Sooner, Fla. B.J., Aug. 1999 (discussing how appellate practice includes consultation before, during and after trial phases.).